**W. R. R. LA VIELLE et al., Appellants,**

**v.**

**Robert J. SEAY, Trustee et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 14, 1966.

As Modified Sua Sponte March 31, 1967.

Thomas C. Carroll, Louisville, for appellants.

Charles E. Keller, Louisville, for appellees.

SCOTT REED, Special Commissioner.

This is an appeal by the defendants in the trial court from a final judgment permanently enjoining them from erecting on their residential property a 64-foot tower to be used for domestic television reception and for "ham" radio transmitting.

The appellees, who were the plaintiffs in the court below, instituted this action alleging that the defendants were acting in violation of certain restrictive covenants applicable to a subdivision and that the plaintiffs, as representatives of the original subdivider, sought enforcement by injunction of these restrictions.

The plaintiffs sought a restraining order without notice which was granted. The defendants then filed an answer and counterclaim. This pleading alleged that their proposed radio and TV tower was not covered by the restrictions relied upon by the plaintiffs; that the plaintiffs, by not enforcing the claimed restriction against like projects, had estopped themselves from the right to enforce such claimed restriction; that the proposed tower would be used in important civil defense work necessary to the national defense, and that the claimed restrictions should not be enforced as being violative of the public interest. As a matter of defensive pleading in the answer the defendants contended that the restraining order was wrongfully issued. The

counterclaim consisted of a plea for damages for the wrongful issuance of the restraining order.

The plaintiffs, after filing a reply to the defendants' counterclaim, simultaneously filed a document styled "Motions for Findings of Facts and Conclusions of Law." The defendants filed a motion for summary judgment. Neither the plaintiffs' "Motions for Findings of Facts and Conclusions of Law" nor the defendants' motion for summary judgment was accompanied by any evidentiary material. Apparently they were related to a pre-trial conference but the record is silent concerning testimony or stipulations made at the conference. It is fair to state that as a part of the plaintiffs' motion herein described, the first paragraph of it did move the court "to dismiss the answer as failing to constitute a defense."

Upon this state of the record, the trial court filed "Findings of Fact and Conclusions of Law and Opinion."

The trial court, in effect, found that the proposed tower did violate the restrictions; that the plaintiffs were not estopped to enforce the restrictive covenants and that plaintiffs were entitled to a permanent injunction prohibiting the erection of the proposed radio and TV tower "until they have complied with the existing restrictions as they may appear of record or until further orders of a court of competent jurisdiction."

After this disposition by the trial court the defendants tendered an amended answer which expanded upon their previous plea that the claimed restriction had been waived and abandoned by inaction on the part of the plaintiffs and by permitting like projects to be completed in the subdivision.

There appears to have been a battle of affidavits; on the one hand, the defendants claiming waiver and abandonment, and on the other hand, the plaintiffs claiming no abandonment of the restrictions, all going to specific conditions existing on various lots in the subdivision.

Then the plaintiffs, who had already received a favorable disposition from the trial court, filed a motion for summary judgment.

The trial court refused the tendered amended answer of the defendants and entered final judgment.

The record illustrates confusion as to the proper scope of summary judgment and we are confronted with the inescapable fact that at the time the trial court made its disposition of this action it had nothing but pleadings before it.

■ In this state of the record, we are of the opinion that the correct procedure is that if a motion for summary judgment is made by a defendant solely on the basis of the complaint, the motion is functionally equivalent to a motion to dismiss for failure to state a claim under CR 12.02(6), the complaint should be liberally construed in favor of the complainant, the facts alleged in the complaint must be taken as true, and the motion for summary judgment must be denied if a claim has been pleaded.

■ If the motion is made either by the claimant or by the defending party solely on the basis of the complaint, answer, and other pleading, if any, the motion is functionally equivalent to a motion for judgment on the pleadings under CR 12.03. The motion should be denied if, as against the moving party, the pleadings raise any issue of material fact. See Clay, CR 56.03, p. 165, and Clay, CR 12.03, p. 203; see also, Moore's Federal Practice, Sec. 56.11(2), pp. 2152, 2153.

Thus, at the time the trial court undertook to finally dispose of this case by operation of our procedural rules it actually had before it a defendants' motion to dismiss the complaint for failure to state a claim and plaintiffs' motion for judgment on the pleadings.

■ Our review of the complaint discloses that taking the facts alleged in it as

true it properly stated a claim and that the action of the trial court in overruling defendants' wrongly denominated motion for summary judgment was proper.

As to the plaintiffs' so-called "Motion for Findings of Facts and Conclusions of Law and to dismiss defendants' answer as failing to constitute a defense," quite another matter is presented. The action of the trial court in purporting to sustain this plea by the plaintiffs was erroneous if the pleadings raised any issue of material fact.

■ Our review of the defendants' answer discloses that material issues of fact were raised by it particularly when we keep in mind, as we must, that our current method of procedure is one of notice pleading as contrasted with fact pleading.

■ The defendants' answer clearly gave notice to the adverse party and to the trial court that they were not only contending that the restrictive covenants themselves were unenforceable against this particular use, but that by reason of factual occurrences the plaintiffs were prevented by the doctrine of waiver and abandonment from enforcing these restrictions against the defendants' proposed project.

■ While it has been recognized that the basic principles applicable to summary judgment procedure generally apply to actions for injunctive relief, it is also true that summary judgment, which the trial court undertook to grant in this case, has been described as a drastic remedy. It is also generally recognized that injunction is an extraordinary remedy which will not be granted except upon a clear showing of an existing equitable right. Thus, we are confronted in the instant case with an instance of the exercise of extraordinary relief in the form of a permanent injunction by a drastic remedy in the form of summary judgment. See Moore's Federal Practice, Sec. 56.17(30) p. 2558; Barron & Holtzoff's Federal Practice and Procedure, Vol. 3, Sec. 1232.3, p. 116; Oscar Ewing, Inc. v.

Melton, Ky., 309 S.W.2d 760; and Conley v. Hall, Ky., 395 S.W.2d 575.

■ We are persuaded that a permanent injunction should be granted by means of summary judgment only in those cases where the showing is very clear and convincing and that in such case as we are confronted with here, to afford relief by means of a permanent injunction where the actual question to be determined is whether or not a judgment on the pleadings should be granted and where as here the pleadings under the notice theory of pleading particularly raised factual issues, the determination to grant a permanent injunction must be characterized as unwarranted.

The foregoing disposition will become clearer when we consider now the substantive law side of the case, having expressed ourselves that the judgment was procedurally erroneous.

The subdivision restrictions with which we are here concerned are very detailed in their requirements as to specific elements. For instance, not only is each lot confined to one dwelling house for a single family, but even porches, fences, vegetable gardens and hedges are undertaken to be regulated with specific limitations or standards applied to these various uses.

The particular restriction with which the present controversy is concerned, is on the other hand, general in its statement in that it provides that since it is the intention of the grantors to restrict their subdivision to only residences of "real architectural merit, good design and suitable material," the plans and specifications for the erection or alteration of any building, fence, wall "or other structure" must be approved, in writing, by the original grantors or their authorized representatives. This restriction further provides that the location and approximate cost of any structure must be set forth and accompanied by a diagram setting forth the exact location of all proposed "structures" on the lot. The next

provision is a direction that, in this instance, the grantors or their representatives "have the right to refuse to approve" any structure applied for which is not deemed "by them as suitable or desirable in their opinion." The particular restriction goes on to provide that in passing on any proposed structure the grantors or their representatives shall have the right to take into consideration the suitability of the structure to the site, the harmony thereof with the surroundings, and the effect of the structure on "the outlook from adjacent or neighboring property."

The pleadings reveal, in the instant case, that the plaintiffs, as authorized representatives of the grantor, seek to prohibit the defendants' radio and TV tower. They characterize it as unsightly and violative of the general plan of the subdivision. Thus, it would be a useless thing to require defendants to submit plans of the proposed structure to plaintiffs for their decision. That decision has already been made, as is clearly disclosed by the pleadings.

We have recently had occasion to reconsider and restate the law in this jurisdiction concerning the construction and enforceability of restrictive covenants in deeds. In Mascolino v. Noland & Cowden Enterprises, Inc., Ky., 391 S.W.2d 710, we pointed out that in construing and enforcing restrictions on real property the court must seek the intention of the grantor or creator of the restrictions from the language used, considered in light of such factors as the general scheme of the subdivision, and that as a matter of judicial construction the court may not substitute what the grantor may have intended to say for the plain import of what he said. In McMahan v. Hunsinger, Ky., 375 S.W.2d 820, we established the proposition that where a general scheme and plan of a subdivision is present it is an important factor to consider in determining the purpose and intent of the restriction. We held in Rieger v. Wessel, Ky., 319 S.W.2d 855, that the intention to impose a general plan of develop-

ment on a subdivision must be determined as of the time the subdivision was platted and lots were first sold therein.

Applying the foregoing rules to the instant case, we are of the opinion that a radio and TV tower is a "structure" within the meaning of the word as used in the subdivision restrictions and the question of whether or not radio and TV towers were known or unknown at the time of the creation of the restrictions is irrelevant. It was the manifest intent of the creator of the restrictions to adopt a general, uniform scheme for the subdivision so as to undertake to control structures of whatever nature on lots in the subdivision. But this does not answer one of the serious problems posed in the instant case.

In all of our former opinions concerning this question of subdivision restrictions we have considered the applicability of the particular restriction to a particular proposed project or use and the question was whether or not the particular project or proposed use fell within the language of the restrictive covenant or whether or not the creator of the restriction had sufficiently manifested his intent to prohibit such activity.

In the instant case, however, we are confronted squarely with the proposition that even though the proposed project be covered by the language of the restriction, discretion is granted to the creator of the restriction, or his authorized representatives, to permit or refuse the proposed project. In the case of Ladd v. Pittsburgh Consolidation Coal Co., 309 Ky. 405, 217 S.W.2d 807, we considered an instance of where an owner of a city lot sold it for business purposes, with a restriction which provided for erection of buildings and operation of needed business thereon, subject to the written approval of the grantor. We held such restriction valid but noted that the consent of the grantor could not be unreasonably withheld without legal recourse on the part of the party subject to the restriction.

It is noted in an Annotation entitled "Validity, Construction and Effect of Restrictive Covenant Requiring Consent of Third Person to Construction on Lot," in 19 A.L.R.2d 1274, at p. 1294, that a power reserved by the common grantor of lots in a subdivision to consent or not consent to particular buildings on particular lots is generally considered to be reasonable and valid. In the same Annotation, however, it is pointed out that the exercise of the power in a particular case must be reasonable and not arbitrary.

■ The determination of whether or not the exercise of the power to permit or refuse has been reasonable or arbitrary is a factual question to be determined in the light of the circumstances, including whether or not the proposed project or use is or is not consistent with the general surroundings in the subdivision development, is in harmony with other buildings and structures therein, and is in compliance with the specific restrictions set out in the plan of development for the subdivision. See 19 A.L.R.2d, at pp. 1294 and 1295.

In the instant case, the defendants also alleged that like structures had been permitted in the subdivision and that the plaintiffs had failed to enforce the restrictions against them.

■ We recognized in Bagby v. Stewart's Ex'r, Ky., 265 S.W.2d 75, and in Hardesty v. Silver, Ky., 302 S.W.2d 578, that the right of enforcement of such subdivision restrictions may be lost by a general change in the character of the neighborhood to which the covenant applies. This, again, is a factual determination, as not only the fact of waiver and abandonment must be considered, but its extent.

■ The defendants' argument that the proposed use is necessary in the public interest by reason of its civil defense characteristics would again appear to be an issue of fact. It appears to us that to refuse enforcement of restrictive covenants on the ground that the public interest demanded their nonenforcement would require a clear and convincing showing of the strong necessity for protection of the public interest in the particular case.

■ The holding of the lower court that the proposed use would be in violation of the zoning laws of the City of Louisville was erroneous in that it was not raised as an issue.

■ The defendants pleaded that the zoning laws did not prohibit their proposed structure and that this was evidence that the original restrictions did not cover the proposed use. The plaintiffs pleaded that even though the zoning laws did not prohibit the proposed use, this fact did not destroy the enforceability of the restrictive covenants. We agree with the plaintiffs' contentions in this respect. See City of Richlawn v. McMakin, 313 Ky. 265, 230 S.W.2d 902; Parrish v. Newbury, Ky., 279 S.W.2d 229.

■ Assuming that it is ultimately determined in the instant case that the proposed project of the defendants cannot be prohibited by virtue of the particular restrictive covenants present here, our examination of the zoning ordinance cited by the trial court reveals that it would then again be a factual issue as to whether or not this particular proposed use would violate such ordinance and in the absence of some evidentiary material, the question could not be determined on the present pleadings.

We, therefore, hold that the trial court properly overruled defendants' motion for a summary judgment. We further hold that the trial court erred in sustaining plaintiffs' motions for judgment on the pleadings and further erred in refusing to allow defendants to amend their answer. In our opinion, this case should be tried on its merits in the light of the principles enunciated herein.

■ Finally, it appears that the plaintiffs were granted a restraining order with-

out notice. No hearing was held on a motion to dissolve the restraining order as such nor did the plaintiffs move for a temporary injunction. Therefore, the restraining order remained in full force and effect until the final judgment herein. The final judgment which we are reversing granted a permanent injunction and therefore, we conclude that our disposition of this appeal should be without prejudice to the rights of the plaintiffs to apply for temporary injunctive relief to maintain the status quo until this action can be tried on its merits and properly disposed of. The parties should proceed in this regard as is provided by the various sections of CR 65.

The judgment is reversed with directions for further proceedings consistent with this opinion.