Thomas J. SCHULTZ, Appellant,

v.

**GENERAL ELECTRIC HEALTH-CARE FINANCIAL SERVICES INC., et al., Appellees.**

No. 2010–SC–000183–DG.

Supreme Court of Kentucky.

Feb. 23, 2012.

Bruce Alan Brightwell, New Albany, IN, Counsel for Appellant.

Tanya Yarbrough Bowman, Steven Michael Crawford, Sheryl G. Snyder, Griffin Terry Sumner, Frost, Brown, Todd, LLC, Louisville, KY, Counsel for Appellees.

Opinion of the Court by Justice SCOTT.

This is an appeal from an opinion of the Court of Appeals affirming the decision of the Jefferson Circuit Court. The trial court granted Appellees, General Electric Healthcare Financial Services, Inc., General Electric Company, and General Electric Capital Corporation (hereinafter collectively referred to as "GE")[1] a judgment on the pleadings and awarded them a $450,000 judgment against Thomas Schultz, the sole shareholder of Intra–Med Services, Inc. (hereinafter "Intra–Med"). Based solely on the pleadings, the court pierced Intra–Med's corporate veil, thereby allowing GE to obtain its judgment against Schultz. For the reasons that follow, we hold that the trial court improperly granted GE's motion for judgment on the pleadings. We, therefore, reverse the decision of the Court of Appeals and re-

1. Our collective reference to General Electric Healthcare Financial Services, Inc., General Electric Company, and General Electric Capital Corporation as "GE" is merely for convenience and should not be construed otherwise.

mand this matter to the trial court for further proceedings.

## I. Background

Schultz served as the president and sole shareholder of Intra–Med, a Kentucky corporation that performed medical diagnostic services. In July 2001, Intra–Med entered into a contract to lease medical equipment from GE. The company subsequently defaulted on the contract by failing to make required payments in 2004. As a result, GE filed a complaint against Intra–Med in Jefferson Circuit Court, which entered a judgment on the pleadings in favor of GE for over $4.7 million on November 15, 2004. GE was able to collect approximately $700,000 of that judgment.

During its collection process, GE learned of certain documents produced in another lawsuit demonstrating that Schultz had used Intra–Med for his own private purposes. GE intervened in this lawsuit and filed a third-party complaint against Schultz seeking to pierce the corporate veil and hold him personally liable for the judgment against Intra–Med.

Schultz subsequently filed an answer to GE's third-party complaint setting forth several admissions, denials, and affirmative defenses. He admitted GE's judgment of November 15, 2004 and that he had knowledge of the judgment on or after that date. He also admitted that, on or about December 1998, he purchased real property in his own name using Intra–Med funds and that Intra–Med did not receive any of the proceeds from the subsequent sale of the property in March 2000. Schultz further admitted that, on or about October 2000, he purchased and improved another piece of real property, again in his own name, using Intra–Med funds and that, after entry of the $4.7 million judgment, he sold the property and Intra–Med did not receive any proceeds from the sale. Finally, he admitted that, on or about May 24, 2001, he purchased a marina slip in his own name with Intra–Med funds and that Intra–Med did not receive any of the proceeds from its subsequent sale.[2] Schultz, however, denied that Intra–Med was his instrumentality, that he exercised control over Intra–Med to defraud or harm GE, and that any refusal to pierce the corporate veil would subject GE to an unjust loss. Finally, Schultz set forth twenty-two affirmative defenses including:

14. The Complaint is barred, in whole or in part, because General Electric knew, at the time it entered into its agreement with Intra–Med in July of 2001, that if there was a default and the acceleration clause was invoked, Intra–Med did not have sufficient assets to pay the full amount that was owed.

15. The Complaint is barred, in whole or in part, because GE had, at the time it entered into the agreements with Intra–Med in July of 2001, full access to Intra–Med's financial information, and still proceeded with the transactions.

16. The Complaint is barred, in whole or in part, because GE had, at the time it entered into the agreements with Intra–Med in July of 2001, the option of asking Thomas Schultz for an individual guaranty to secure these agreements, and it failed to do so.

On September 10, 2007, the trial court entered judgment on the pleadings in favor of GE in the amount of $450,000. In so doing, the court held that Schultz's ad-

---

2. In its brief, GE also notes that Schultz admitted that he instructed Intra–Med to disregard the November 15, 2004 judgment and to pay Intra–Med's creditors other than GE. Schultz, though, denied this allegation to the extent it implied that he had an obligation to see that GE's judgment was satisfied.

missions in his answer to GE's complaint supported the conclusion that he improperly used Intra–Med's funds and that none of his affirmative defenses would preclude entry of judgment against him.[3]

On review, the Court of Appeals affirmed the trial court, concluding that none of Schultz's affirmative defenses negated the fact that he admittedly used corporate funds and property as his own to GE's detriment. The court held that his admissions fulfilled the requirements for piercing the corporate veil and supported the trial courts judgment on the pleadings. This Court granted Schultz's motion for discretionary review.

## II.  Law

### A.  The Nature of Piercing the Corporate Veil

■ General principles of corporate law, specifically with respect to piercing the corporate veil, have become axiomatic. For example, it is widely accepted that a corporation should be viewed as a separate legal entity. *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock,* 511 S.W.2d 224, 227 (Ky.1974). As a result, a court will disturb the legal fiction of corporate separateness only in the rarest of circumstances. *Morgan v. O'Neil,* 652 S.W.2d 83, 85 (Ky.1983) ("Holding a shareholder in a corporation individually liable for a corporate debt is an extraordinary procedure and should be done only when the strict requirements for imposing individual liability are met."); *White v. Win-*

*chester Land Development Corporation,* 584 S.W.2d 56, 62 (Ky.App.1979) ("Generally speaking, the corporate veil should only be pierced 'reluctantly and cautiously' . . . ."); *See also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,* 752 A.2d 1175, 1183 (Del.Ch.1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task."), (footnote omitted); *TNS Holdings, Inc. v. MKI Securities Corp.,* 92 N.Y.2d 335, 680 N.Y.S.2d 891, 703 N.E.2d 749, 751 (1998) (stating that "[t]hose seeking to pierce a corporate veil . . . bear a heavy burden . . . .").

Perhaps because these principles are so akin to a creed, Kentucky case law primarily outlines the factual circumstances in which a court may set aside the corporate veil. *See, e.g., White,* 584 S.W.2d 56. However, the issue in this case—whether the trial court erred in granting GE's motion for judgment on the pleadings—compels us to elucidate the nature of the piercing doctrine rather than simply regurgitate platitudes. Specifically, we must first resolve whether the doctrine of piercing the corporate veil arises in law or equity because such a determination guides the appropriateness of piercing the veil based solely upon the pleadings.

■ Although we have never addressed this underlying issue, the Court of Appeals set forth a well-reasoned argument that "the decision as to whether to pierce the corporate veil is an equitable

---

**3.** GE initially requested a partial judgment on April 17, 2007 in the amount of $1,150,000, allegedly the amount of Intra–Med funds improperly used by Schultz. Although the trial court held that his admissions supported the conclusion that Schultz improperly used Intra–Med's funds and that none of his affirmative defenses would preclude entry of judgment, the court found that Schultz might have been entitled to receive some payments from

Intra–Med because he personally loaned the company $700,000. As a result, the court denied GE's initial motion.

GE next filed a motion in which it stated it would settle for $450,000—the difference between $1,150,000 and the $700,000 loan. GE also stipulated that it would voluntarily dismiss its remaining claims against Schultz if the court entered the $450,000 judgment. The court granted this motion.

one" in *Daniels v. CDB Bell, LLC,* 300 S.W.3d 204, 213 (Ky.App.2009). In *Daniels,* the trial court submitted to the jury the question of whether the instrumentality theory was available to pierce the corporate veil. *Id.* at 212. Because equitable issues are generally not triable by juries,[4] the appellate court narrowed its analysis to whether "piercing the corporate veil" is an equitable action:

In order to resolve whether "piercing the corporate veil" is an equitable action for judicial determination, it is important to review the concept and theories available for "piercing the corporate veil." First, as previously stated, a corporation is a separate entity from its shareholders. Continuing the inquiry, we cite the definition of "piercing the corporate veil" in 18 *C.J.S. Corporations* § 14 (2008):

the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts, and certain elements must be established[.]

Interestingly, the text refers to "the judicial act." Further, Kentucky jurisprudence recognizes three basic "theories" to "pierce the corporate veil" and hold the shareholders of a corporation responsible for corporate liabilities....

. . . .

In order to ascertain whether the corporate form should be disregarded, courts weigh various factors, including whether the corporate form was abused and whether the form was used to perpetrate a fraud.

Further guidance on whether the issue is for judicial or jury determination is provided in *Poyner v. Lear Siegler, Inc.,* 542 F.2d 955, 959 (6th Cir.1976), wherein the federal court explained:

Whether it is appropriate to disregard the corporate entity, and whether Poyner would have to litigate both liability for the injuries and LSI's liability for Erma's obligations in order to recover from LSI, are clearly questions of law. Whether an arrangement works an "unfair" hardship is similarly a question of law. If a determination concerns whether the evidence showed that something occurred or existed, it is a finding of fact. However, if a determination is made by processes of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law. *Galena Oaks Corp. v. Scofield,* 218 F.2d 217, 219 (5th Cir.1954). *See also Kippen v. Am. Automatic Typewriter Co.,* 324 F.2d 742, 745 (9th Cir.1963) (whether there was "good cause" to discharge); *Campbell Soup Co. v. Wentz,* 172 F.2d 80 (3rd Cir.1948) (whether carrots are "unique," permitting the remedy of specific performance). The issue whether a corporate arrangement works a hardship which is "unfair," and which therefore warrants denial of corporate entity treatment, is a question about the legal consequences which follow from the arrangement. It is therefore a conclusion of law.

To summarize, the *Poyner* Court reasoned that a decision about whether to disregard the corporate entity and whether the issue is one of fairness or equity are questions for the court.

*Id.* at 211–212.

We adopt the reasoning of the *Daniels* decision and hold that the doctrine of piercing the corporate veil arises in equity. As the Court of Appeals aptly noted, per-

---

**4.** "[I]n Kentucky, equitable issues are not triable by juries unless agreed to by the parties."

*Daniels v. CDB Bell, LLC,* 300 S.W.3d at 210 (citations omitted).

suasive authority reinforces such a determination:

> Support for the proposition that the issue of veil piercing is an equitable matter is found in other sources: *See Fletcher Cyclopedia of Law of Corporations* § 41.29 at p. 177 (2006) stating:
>
>> Since the doctrine of piercing the corporate veil is an equitable one that is particularly within the province of the trial court, some courts take the position that the right to a jury trial on the issue of piercing the corporate veil does not exist, (internal footnotes omitted).
>
> *See also Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (U.S.Me.1974) (stating that "courts of equity" decide whether to pierce the corporate veil); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1345 (7th Cir.1987) (stating that "disregard of the corporate entity is essentially an equitable doctrine"); *In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo.*, 720 F.Supp. 1467, 1484 (D.Colo.1989) (stating that "the ultimate decision of whether to disregard the corporate form ... lies in equity"); *United States v. Golden Acres, Inc.*, 684 F.Supp. 96, 103 (D.Del.1988) (concluding that, under the law of Delaware, piercing the corporate veil is equitable relief for which a federal jury trial is unavailable); and *International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731, 737 (7th Cir.2004) (opining that "[i]t follows that veil-piercing must be an exercise of equitable power.").

*Id.* at 213. Moreover, because the very act of piercing the corporate veil requires the decision maker to set aside a legal fiction based upon notions of fairness and hardship, we would have to stretch the boundaries of common sense and engage in linguistic gymnastics to describe veil piercing as anything but an equitable action.

Having better defined the nature of the piercing doctrine, we must next examine the wisdom of piercing the corporate veil based solely on the pleadings.

## B. Piercing the Corporate Veil on the Pleadings

Civil Rule 12.03 provides that any party to a lawsuit may move for a judgment on the pleadings. In *City of Pioneer Village v. Bullitt County ex rel. Bullitt Fiscal Court*, 104 S.W.3d 757, 759 (Ky.2003), this Court outlined the function and application of CR 12.03:

> The purpose of the rule is to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute. It is designed to provide a method of disposing of cases where the allegations of the pleadings are admitted and only a question of law is to be decided. The procedure is not intended to delay the trial in any respect, but is to be determined before the trial begins. The basis of the motion is to test the legal sufficiency of a claim or defense in view of all the adverse pleadings. When a party moves for a judgment on the pleadings, he admits for the purposes of his motion not only the truth of all his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also the untruth of all his own allegations which have been denied by his adversary. *Archer v. Citizens Fidelity Bank & Trust Co.*, Ky., 365 S.W.2d 727 (1963). The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief. *Cf. Spencer v. Woods*, Ky., 282 S.W.2d 851 (1955).

■ As previously discussed, the doctrine of piercing the corporate veil, like injunctive relief, arises in equity. In *La Vielle v. Seay*, 412 S.W.2d 587, 589–590 (Ky.1966), the trial court entered a judgment on the pleadings, which enjoined the appellants from erecting a tower to be used for television reception and radio transmitting on their residential property.[5] In reviewing the trial court decision, our predecessor court described summary judgment as a "drastic remedy" and noted that an injunction is generally recognized as an "extraordinary remedy which will not be granted except upon a clear showing of an existing *equitable* right." *Id.* at 591 (emphasis added). Thus, the court characterized the circumstances before it as "an instance of the exercise of extraordinary relief in the form of a permanent injunction by a drastic remedy in the form of summary judgment." *Id.* The court ultimately held that the trial court erred in granting such relief and set forth a stern warning going forward:

> We are persuaded that a permanent injunction should be granted by means of summary judgment only in those cases where the showing is very clear and convincing and that in such case as we are confronted with here, to afford relief by means of a permanent injunction where the actual question to be determined is whether or not a judgment on the pleadings should be granted and where as here the pleadings under the notice theory of pleading particularly raised factual issues, the determination

to grant a permanent injunction must be characterized as unwarranted.

*Id.* at 591, 593.

■ We believe the rule-of-thumb set forth by the *La Vielle* decision—that a judgment' on the pleadings should rarely be granted against a defendant who has filed a proper and contesting answer in an equity action—applies with equal, if not greater, force when a party seeks to pierce the veil based solely on the pleadings. In light of their obligation to respect the legal fiction of corporate separateness, trial courts should be very reticent to pierce at this juncture of litigation. And, though we do not completely foreclose such action, we simply cannot conceive of a scenario in which a trial court could appropriately pierce the corporate veil based solely on pleadings raising a multitude of equitable issues.

With this in mind, we now address the case before us.

### III. Analysis

■ Schultz argues that the trial court erred in piercing Intra–Med's veil based solely on the pleadings.[6] According to Schultz, it was improper to pierce at this juncture because he denied the allegations made by GE. Furthermore, he posits that his affirmative defenses precluded a judgment on the pleadings. We review *de novo. Security Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001, 1005 (6th Cir.1995) (conducting *de novo*

---

5. The appellees actually had moved for 'Findings of Facts and Conclusions of Law' rather than judgment on the pleadings pursuant to CR 12.03. *La Vielle*, 412 S.W.2d at 590. However, at the time the trial court granted the motion, it had nothing but pleadings before it. *Id.* As a result, our predecessor court considered the motion filed by the appellees to be a motion for judgment on the pleadings. *Id.*

6. Schultz also argues that GE's failure to ask him for a personal guarantee precludes it from ever piercing Intra–Med's corporate veil. We decline to address this argument, as this goes to the substance of veil piercing and can better be addressed by the trial court. We also need not respond to his alternative argument as to the amount of the judgment, as we agree that the trial court erred by entering any judgment at this juncture.

review of a grant of judgment on the pleadings under Fed.R.Civ.P. 12(c)).[7,8]

In this case, the trial court allowed GE to pierce Intra–Med based upon the instrumentality theory of veil piercing. In *White*, the Court of Appeals succinctly outlined this theory:

> Under the instrumentality theory three elements must be established in order to warrant a piercing of the corporate veil: (1) that the corporation was a mere instrumentality of the shareholder; (2) that the shareholder exercised control over the corporation in such a way as to defraud or to harm the plaintiff; and (3) that a refusal to disregard the corporate entity would subject the plaintiff to unjust loss.

584 S.W.2d at 61. Schultz, though, denied that Intra–Med was an instrumentality, denied that he exercised control of the entity to defraud or harm GE, and denied that the refusal to disregard the corporate form would subject GE to an unjust loss, as well as set forth relevant affirmative defenses: that GE knew, at the time it entered into its agreement with Intra–Med, that if there was a default and the acceleration clause was invoked, Intra–Med did not have sufficient assets to pay the full amount owed; that GE had, at the time it entered into the agreement, full access to Intra–Med's financial informa-

tion, yet still proceeded with the transactions; and that GE had, at the time it entered into the agreement, the option of asking for an individual guaranty to secure these agreements and failed to do so.

■ Although we acknowledge that only the denial of material facts will be effective in defeating a motion for judgment on the pleadings and that denial of legal conclusions will not, *Archer v. Citizens Fidelity Bank & Trust Co.*, 365 S.W.2d 727, 729 (Ky.1962), we nonetheless believe that the trial court was in no position to conclude that Schultz exercised control of the entity to defraud or harm GE or that the refusal to disregard the corporate form would subject GE to an unjust loss. GE set forth nothing in its pleadings which, if not denied, would conclusively establish either of the latter two prongs of the instrumentality test. At best, his admissions that he, individually, used Intra–Med's funds to purchase or improve property for himself,[9] that he knew of the November 15, 2004 judgment, and that Intra–Med did not receive any of the proceeds of the subsequent sales show that Schultz treated Intra–Med as a mere instrumentality. However, these admissions, though certainly relevant, do not conclusively establish harm, fraud, or unjust loss. Again, we cannot hypothesize as to when a trial court could appropriately pierce based solely on the pleadings, but

---

7. CR 12.03 is the Kentucky counterpart of Fed.R.Civ.P. 12(c). *Archer v. Citizens Fidelity Bank & Trust Co.*, 365 S.W.2d 727, 729 (Ky. 1962).

8. Interestingly, GE suggested in its brief that *de novo* review is inappropriate in this case because matters of equity and equitable remedies are traditionally within the discretion of the trial court. However, this contention ignores that this case was resolved strictly on the pleadings. More importantly, in making such an argument GE acknowledges that the doctrine of piercing the corporate veil arises in equity.

9. We note that the admitted transactions by Schultz occurred *before* Intra–Med entered into its contract with GE in July 2001. Specifically, Schultz admitted that he, individually, used Intra–Med's funds on or about, December 1998, October 2000, and May 24, 2001. Thus, absent a record, one would assume Intra–Med's financial records—which were alleged to have been available to GE— would not have reflected these amounts (or assets) as Intra–Med's at the time of the loan.

we can confidently say that the circumstances before us do not suffice solely on the pleadings.

In light of its obligation to evaluate the fairness and hardship and the absence of material facts definitively showing harm, fraud, or unjust loss, we hold that the trial court erred in piercing Intra–Med based solely on the pleadings. On remand, we direct the trial court to resolve this matter at a more appropriate juncture in the litigation. In so doing, the court should consider our recent decision in *Inter–Tel Technologies, Inc., et al. v. Linn Station Properties, LLC, et al.*, 360 S.W.3d 152 (Ky.2012).

### IV. Conclusion

For the foregoing reasons, the decision of the Court of Appeals is hereby reversed and we remand this matter to the trial court for proceedings consistent with this Opinion.

All sitting. All concur.