RENDERED:  AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0852-MR

GREGGORY D. SEARS AND
GENEVA E. SEARS                                                        APPELLANTS


                    APPEAL FROM CHRISTIAN CIRCUIT COURT
v.                  HONORABLE JOHN L. ATKINS, JUDGE
                    ACTION NO. 22-CI-00183


ADDAM G. CLARK                                                           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND ECKERLE, JUDGES.

DIXON, JUDGE:  Greggory D. Sears and Geneva E. Sears appeal from the order

granting judgment on the pleadings in favor of Addam G. Clark, entered by the

Christian Circuit Court on May 17, 2022, and the order denying their motion to

vacate or set aside, entered on June 22, 2022.  Following a careful review of the

record, briefs, and law, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

In February 2020, the Searses purchased two lots totaling 21 acres in Oak Grove for $281,820. They also owned a four-acre tract in Oak Grove through their business, Wolf Lick Properties, LLC. They used realtor Debra Butts to list these properties for sale for $289,900 and $200,000, respectively, both with an address of "0 Pembroke Oak Grove Road."

In February 2022, Clark made a written offer to buy "All that tract of land known as: 0 Oak Grove Pembroke Road, Oak Grove, Tennessee 42262," and further described as "Lots 1 and 2 Pembroke Oak Grove Road" for $210,000. The Searses counteroffered with the exception that "Anywhere TN is referenced shall be replaced with Kentucky." Clark accepted the counteroffer.

Clark and the Searses entered a Lot/Land Purchase and Sale Agreement which referenced instrument number 162000002717. The instrument number matches the map number/account number listed with the Christian County, Kentucky, Property Valuation Administrator (PVA) for the 21-acre parcel.

Unfortunately, realtor Butts and the Searses believed Clark's offer concerned the purchase of the four-acre tract rather than the lots totaling 21 acres. Accordingly, the Searses did not close.

On March 16, 2022, Clark sued the Searses for specific performance and damages. Clark served interrogatories, requests for production of documents,

and requests for admission on the Searses, which they never answered. The Searses were served via civil summonses on March 21, 2022, and answered on April 19, 2022, pleading the affirmative defenses of failure to state a claim upon which relief may be granted, statute of frauds, mistake, no meeting of the minds, and failure to join indispensable parties.

On April 22, 2022, Clark moved the trial court for judgment on the pleadings. After the matter was fully briefed, including the filing of Butts' affidavit, a hearing was held on May 11, 2022. On May 17, 2022, the trial court entered its order granting the motion for judgment on the pleadings and ordering the Searses to convey Lots 1 and 2 to Clark. The Searses moved the trial court to vacate or set aside the judgment, dismiss the action, and for leave to file a counterclaim. Their motion was denied, and this appeal followed.

## STANDARD OF REVIEW

Under CR[1] 12.03, "any party to a lawsuit may move for a judgment on the pleadings." *City of Pioneer Vill. v. Bullitt Cnty.*, 104 S.W.3d 757, 759 (Ky. 2003). A judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief." *Id.* The trial court is "not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875,

---

[1] Kentucky Rules of Civil Procedure.

883-84 (Ky. App. 2002). We review a judgment on the pleadings *de novo*. *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 177 (Ky. 2012).

Even so, CR 12.03 requires that a motion in which matters outside the pleadings are considered be treated as a motion for summary judgment. *Craft v. Simmons*, 777 S.W.2d 618 (Ky. App. 1989). *See Cabinet for Human Res. v. Women's Health Servs., Inc.*, 878 S.W.2d 806 (Ky. App. 1994) (motion to dismiss treated as motion for summary judgment because the court considered an affidavit in support of the motion). In the case herein, affidavits and other documents beyond public records were provided to the trial court.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

An appellate court's role in reviewing an award of judgment based solely on pleadings is to determine whether the trial court erred in finding no genuine issue of material fact exists, and the moving party was entitled to

judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of such summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

Here, because the trial court essentially granted summary judgment to Clark, we review the facts in a light most favorable to the Searses and resolve all doubts in their favor. Applying the *Steelvest* standard, and based on the record, we agree with the trial court that no genuine issue of material fact exists. Therefore, we conclude that a judgment on the pleadings was proper.

### LEGAL ANALYSIS

On appeal, the Searses first argue that the trial court improperly granted Clark's motion because there were genuine issues of material fact. The "issues" they identify are: (1) their belief that they were selling the four-acre tract rather than the 21 acres, and (2) the sale price was well below their mortgage payoff, "which would make their acceptance of it, and agreement to it nonsensical and outright absurd."

Beginning with the Searses' first issue of error – namely, that they mistakenly believed Addams' Lot/Land Purchase and Sale Agreement related to the smaller tract – this argument is unavailing. Under the rules of contract

interpretation, the intentions of the parties are to be discerned from the four corners of the document, and where there is no ambiguity, extrinsic evidence should not be considered. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). "[A]bsent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky. App. 1985)).

In the case herein, the agreement unambiguously identifies an instrument number and describes the land as "Lots 1 and 2." The instrument number matches the PVA's report clearly identifying the 21 acres. Moreover, Lots 1 and 2 on the division plat also depict the 21 acres, while the other four acres the Searses own – through their LLC – are Lots 4 and 5. Furthermore, there is no allegation of fraud in this case but, rather, only a unilateral mistake. Unfortunately for the Searses, it is well-settled that "unilateral mistake is not ground for reforming a written instrument[.]" *Cadleway Props., Inc. v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280, 287 (Ky. App. 2010). Additionally, parties are free to enter contracts even if they make a bad bargain. *See Conseco Fin. Servicing Corp.*, 47 S.W.3d at 341. Thus, though there may be "issues," there are no genuine issues of material fact that preclude a judgment in Clark's favor.

The Searses next argue that the trial court prematurely granted summary judgment. It is well-established that "summary judgment is only proper after a party has been given **ample opportunity** to complete discovery, and then fails to offer controverting evidence." *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) (emphasis added) (citing *Hartford Ins. Grp. v. Citizens Fid. Bank & Tr. Co.*, 579 S.W.2d 628 (Ky. App. 1979)). Yet, it is "not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so." *Hartford*, 579 S.W.2d at 630.

In *Hartford*, a period of approximately six months between filing of the complaint and summary judgment was found to be a sufficient period of time to conduct discovery. However, this is not a bright-line rule, and the appropriate time for discovery necessarily varies from case to case depending on the complexity, availability of information sought, and the like. *See Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007), *as modified* (Jul. 13, 2007).

Here, while only a matter of months elapsed between the filing of the complaint and the dismissal based on the terms of the parties' contract, this is not a complicated case, nor does it appear that any relevant information pertaining to the contract has been withheld. Therefore, we cannot say the trial court's grant of summary judgment was premature.

Next, the Searses maintain that the real estate purchase contract fails to satisfy the statute of frauds. KRS[2] 371.010(6) requires "any contract for the sale of real estate . . . be in writing and signed by the party to be charged therewith[.]" Here, the agreement was in writing and signed by the Searses. Consequently, their argument centers solely on the sufficiency of the contract's description of the property and wholly ignores the first numbered paragraph of the agreement which specifically references an instrument number identifying the property. While the description certainly could be clearer, it is sufficient to identify the property being purchased/sold and does not run afoul of the statute of frauds. *See Gray v. Stewart*, 658 S.W.3d 1, 10 (Ky. 2022), *reh'g denied* (Dec. 15, 2022).

Finally, the Searses argue that the trial court erred by denying joinder of necessary/indispensable parties – their realtor and the bank holding a mortgage on the 21 acres. As to joinder, we are mindful,

> [t]he decision as to necessary or indispensable parties rests within the sound authority of the trial judge in order to effectuate the objectives of the rule. The exercise of discretion by the trial judge should be on a case-by-case basis rather than on arbitrary considerations and such a decision should not be reversed unless it is clearly erroneous or affects the substantial rights of the parties.

*Commonwealth, Dep't of Fish & Wildlife Res. v. Garner*, 896 S.W.2d 10, 14 (Ky. 1995) (quoting *West v. Goldstein*, 830 S.W.2d 379 (Ky. 1992)).

---

[2] Kentucky Revised Statutes.

CR 19.01 permits joinder of additional parties to a lawsuit under certain limited circumstances. CR 19.01, titled "Persons to be joined if feasible[,]" provides:

> [a] person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

Kentucky courts have interpreted CR 19.01 stating:

> "[a]n indispensable party is one whose absence prevents the Court from granting complete relief among those already parties." *Milligan v. Schenley Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. App. 1979) (*superseded by statute on other grounds*). Likewise, the Court in [*West*, 830 S.W.2d 379], characterized a necessary party as one whose interest would be divested by an adverse judgment.

*Kentucky Ass'n of Fire Chiefs, Inc. v. Kentucky Bd. of Hous., Bldgs. & Const.*, 344 S.W.3d 129, 134 (Ky. App. 2010), *as modified* (Jan. 14, 2011).

CR 19.01 is patterned after Federal Rule of Civil Procedure (FRCP)

19.[3] The only significant difference between the two concerns jurisdiction.

---

[3] FRCP 19, in pertinent part, states:

**(a) Persons Required to Be Joined if Feasible**.

**(1)** *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*(2) Joinder by Court Order*. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(b) When Joinder Is Not Feasible**. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

Therefore, cases analyzing FRCP 19 are relevant in determining the proper interpretation and application of CR 19.01.

Under FRCP 19, there is a bifurcated process for determining whether a non-party is either necessary under subsection (a) or indispensable under subsection (b).[4]  The Court in *Am. Express Travel Related Services, Company v. Bank One-Dearborn, N.A.* set forth the framework for how joinder determinations are to be made under this bifurcated process, observing:

> Rule 19 lays out a three-step test for courts to use in determining whether an absent party must be joined. [FRCP] 19.  First, the court must determine whether the party is necessary and should be joined under Rule 19(a). If the person or entity is a necessary party, the court looks to whether joinder is feasible, or if a lack of subject matter or personal jurisdiction makes joinder impossible. Third, if joinder is not possible, the court must weigh the

> **(2)** the extent to which any prejudice could be lessened or avoided by:
>
>> **(A)** protective provisions in the judgment;
>>
>> **(B)** shaping the relief; or
>>
>> **(C)** other measures;
>
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
>
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

[4]  In Kentucky, FRCP 19 is divided into CR 19.01 and CR 19.02.  CR 19.01 is used to determine whether a party is necessary, like FRCP 19(a).  CR 19.02 addresses indispensability and is essentially identical to FRCP 19(b).

> equities of the situation pursuant to Rule 19(b) and determine if the suit can continue in the party's absence or if the case should be dismissed because the party is indispensable. *See* [FRCP] 19; *Hooper v. Wolfe*, 396 F.3d 744, 747 (6th Cir. 2005); *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).

195 F.App'x 458, 460 (2006). Applying this framework, rather than reviewing the applicability of each provision of FRCP 19, the analysis begins and ends with subsection (a) – the equivalent of CR 19.01 – if a non-party is determined not to be necessary to the litigation.

In *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1 (1st Cir. 1998), the Court analyzed whether a non-party was necessary. Therein, Delgado's daughter was sexually abused and raped at a shopping center. Delgado sued the shopping center seeking damages for emotional pain and suffering he experienced because of his daughter's rape. The trial court determined Delgado's daughter was a necessary party to the litigation under FRCP 19(a)(2)(ii), reasoning:

> the potential for inconsistent verdicts in [Daughter's] state action and Delgado's federal action subjected defendants to a substantial risk of incurring multiple or otherwise inconsistent obligations. The court also observed that allowing the two actions to proceed would be an inefficient use of judicial resources and raised the specter of one of the plaintiffs using "offensive collateral estoppel" against defendants.

139 F.3d at 2. On appeal, the Court considered the correct interpretation and application of FRCP 19. Noting a plaintiff has the right to control their litigation,

FRCP 19(a) balances those rights "against the defendants' (and systemic) interests in avoiding judgments giving rise to 'inconsistent obligations.'" 139 F.3d at 3. The Court went on to explain the meaning of "inconsistent obligations" under the Rule:

> "Inconsistent obligations" are not, however, the same as inconsistent adjudications or results. *See Micheel v. Haralson*, 586 F.Supp. 169, 171 (E.D. Pa. 1983); *see also* 4 James Wm. Moore *et al.*, Moore's Federal Practice ¶ 19.03 (3d ed. 1997). Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. *See* 4 Moore's at ¶ 19.03. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. *See* [*Nat'l*] *Union Fire Ins. Co. of Pittsburgh v. Massachusetts Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 322 (D.Mass. 1987) (citing *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984)); *see also Boone v.* [*Gen.*] *Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982) (the threat of inconsistent obligations, not multiple litigations, informs [FRCP] 19(a) considerations); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980) (similar). Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident – i.e., a risk of inconsistent adjudications or results – does not necessitate joinder of all of the parties into one action pursuant to [FRCP] 19(a). *See Field*, 626 F.2d at 301. Moreover, where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages. *See In re Torcise*, 116 F.3d 860, 866 (11th Cir. 1997).

*Id.* With these considerations in mind, the Court then rejected the trial court's holding as to joinder, stating:

> In this situation, defendants faced a federal action and a state action arising from the same incident. In reasoning that defendants could be facing "inconsistent obligations," the district court noted that defendants could be found liable to Delgado in federal court, but not liable to [Daughter] in state court, or vice versa. Although the court also looked to other factors in reaching its conclusion, it is this determination – which is really a determination that defendants faced the threat of ***inconsistent results*** – that grounded the court's ruling that [Daughter] was a necessary party to this lawsuit. Yet as we have explained, the mere possibility of inconsistent results in separate actions does not make the plaintiff in each action a necessary party to the other.

*Id.* (emphasis added). Applied to the case herein, failure to join additional parties poses no threat of inconsistent obligations under the Rule for those already parties.

CR 19.01 and FRCP 19(a) permit joinder if "in [the party's] absence complete relief cannot be accorded among those already parties." In *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, the Court noted,

> Under Rule 19(a), we ask first whether complete relief can be accorded to the parties to the action in the absence of the unjoined party. [FRCP] 19(a)(1). A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. *The effect a decision may have on the absent party is not material.*

11 F.3d 399, 404 (1993) (emphasis added). "It is a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable, who are not essential for just adjudication and who have a separate cause of action entirely." *Bakia v. Cty. of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982) (citation omitted). The criteria of "necessary" has been further explained as follows:

> [i]f the interests of necessary parties are separable from those of parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the persons not before the court are not [necessary] parties, and the court may proceed with the case and adjudicate upon the rights of those who are made parties.

59 Am.Jur.2d *Parties* § 130 (2002). Here, complete, and final justice can be obtained without joining the additional parties.

> As explained in *Corpus Juris Secundum*,
>
> Parties are not necessary to a complete determination of the controversy unless they have *rights which must be ascertained and settled* before the rights of the parties to the suit can be determined. Accordingly, a person is not a necessary party where he or she has *no interest in the subject matter of the litigation which can be affected by a judgment or decree rendered therein* as where an adjudication of the rights of the other parties would in no way affect his or her rights or where his or her presence before the court is not necessary to a determination of the issues joined between the parties to the action.

67A C.J.S. *Parties* § 3 (2020) (emphasis added) (footnotes omitted).

-15-

Here, there is no indication that interests of additional parties, if any, in the subject matter of this litigation would be affected by a failure to join. Thus, there is no valid basis pursuant to CR 19.01 to mandate joinder. Since the additional parties cannot be viewed as necessary parties, we need not address any other provision of the Rule.

## CONCLUSION

Therefore, and for the foregoing reasons, the orders of the Christian Circuit Court are AFFIRMED.

ECKERLE, JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING: I respectfully dissent. The contract is ambiguous and fails to identify the property sufficiently to satisfy the statute of frauds. So, it was not proper to consider extrinsic evidence to "designate" the property. *See generally Gray v. Stewart*, 658 S.W.3d 1 (Ky. 2022). Clark was not entitled to summary judgment based on the evidence in the record before us, and the trial court erred in granting his request for specific performance and ordering that the 21-acre property be conveyed to him.

According to the majority:

> In the case herein, the agreement unambiguously identifies an instrument number and describes the land as "Lots 1 and 2." The instrument number matches the

-16-

> PVA's report clearly identifying the 21 acres. Moreover, Lots 1 and 2 on the division plat also depict the 21 acres, while the other four acres the Searses own – through their LLC – are Lots 4 and 5.

(Opinion, p. 6.) But the written contract does not explicitly refer to any PVA document nor to any plat.

The written offer submitted by Clark refers to a parcel of property he identifies as 0 Oak Grove Pembroke Road, Oak Grove, Tennessee. No deed book reference is provided in the written offer.

The offer has "162000002714" in a blank before "instrument number" and contains the further description: "Lots 1 and 2 Pembroke Oak Grove Road." The offer does not refer to any plat. The offer does not identify "162000002714" as a number assigned by any PVA office – much less clearly identify that number as a map number assigned by the PVA office in Christian County, Kentucky. Indeed, Clark's argument that those numerals clearly refer to a PVA plat from Christian County, Kentucky, is contrary to the indisputable fact that the offer itself plainly states that it was made for property located in Tennessee.

The counteroffer – which the Searses submitted, and Clark accepted – refers to the property being sold as located in Kentucky, not Tennessee. It identifies the property being sold simply as "0 Oak Grove Pembroke Road, Oak Grove KY 42262." The counteroffer makes no reference to any deed book, instrument number or recorded plat. And, unlike the original offer, the

-17-

counteroffer does not contain the description "Lots 1 and 2 Pembroke Oak Grove Road."

Neither the offer nor the counteroffer describes the acreage of the property being sold. Neither identifies the property being sold as all of the Searses' property at the 0 Oak Grove Pembroke Road address. *See Gray v. Stewart*, 658 S.W.3d at 19-20 (descriptions of acreage or of the property for sale being all of the owner's property at a particular location serve to identify the information necessary for conveying property – ownership, location and area or amount).

Neither the offer nor counteroffer identifies the property by any MLS listing number either. And while the offer refers to Lots 1 and 2 on Oak Grove Pembroke Road, the counteroffer does not refer to any numbered lots. While Clark may perceive that the property being sold is a 21-acre property due to his references to Lot 1 and 2 in his offer, perhaps others (such as the Searses) might perceive that the property being sold was not the 21-acre property – especially since the counteroffer did not repeat the reference to Lots 1 and 2.

In short, the descriptions in the written contract fail to "identify the specific property upon which the minds of the parties have met" as they do not identify all "information essential to conveying a particular piece of property" – *i.e.*, area or amount as well as ownership and location. *See Gray*, 658 S.W.3d at

19-20. At most, the descriptions in the written contract indicate the property for sale was owned by the Searses and is located on Oak Grove Pembroke Road. But these descriptions do not identify the acreage of the property or whether it was all of the property owned by the Searses at this location.

Under these circumstances, the writing did not – by itself – clearly identify the property being sold. Notwithstanding the "instrument number" of "162000002714," which is neither in the usual dashes-and-decimals format of a typical PVA number nor described as a PVA number in the written contract, the written contract document did not refer to any other writing identifying the property. Thus, neither the written contract document itself nor any other writing referenced therein clearly identified the property being conveyed.

Even though the written contract document indicates the Searses' ownership of and the general Oak Grove Pembroke Road location of the property to be sold, one would have to resort to verbal testimony to determine the property's boundaries and acreage. This is not sufficient to satisfy the statute of frauds. *See Gray*, 658 S.W.3d at 20 (real estate sale contract unenforceable under the statute of frauds because there was nothing in the writing itself to resolve the dispute about the acreage intended to be conveyed, despite contract generally identifying ownership and location and stating the parties had agreed on boundaries).

Furthermore, especially viewing the record in the light most favorable to the Searses, the written sales contract document does not reflect a meeting of the minds about what property was being sold. While the statute of frauds is not intended to preclude the enforcement of valid written contracts, *id.* at 9, there is no valid contract where there is no meeting of the minds. In fact, longstanding Kentucky precedent describes a meeting of the minds as "the most essential factor to constitute a binding contract." *See Utilities Elec. Mach. Corp. v. Joseph E. Seagram & Sons*, 300 Ky. 69, 75, 187 S.W.2d 1015, 1018 (1945).

In sum, I would reverse the grant of specific performance because the contract was ambiguous and failed to sufficiently identify the property in such a way as to satisfy the statute of frauds or to reflect a true meeting of the minds.

BRIEFS FOR APPELLANTS:

Matthew J. Baker
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

James G. Adams III
Hopkinsville, Kentucky