## City of Oakdale v. Sanders' Executrix.

(Decided October 16, 1913).

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Municipal Corporations—Jurisdiction Over Territory—Burden of Maintaining Thoroughfares.—When a city takes jurisdiction over territory it assumes the burdens then incident to it, among which is the maintenance of public thoroughfares.

2.  Municipal Corporations—Boundary of Territory—Evidence—Instructions—Pleading.—While an issue as to the location of the street where the accident occurred is made in the pleadings, plaintiff offered proof that the place was within the city's boundary, and the city offering no proof to the contrary, it stands uncontradicted that the place of the accident was within the city limits, and there being no issue in the proof on this point, there was no occasion for the court to instruct the jury with reference to it.

3.  Negligence—Specific Acts Charged—Pleading.—While it is a familiar rule that when specific acts of negligence are charged a recovery will not be permitted for others not charged, the original petition charges that the city was carelessly negligent in permitting the road to remain in a dangerous condition for many months before the accident occurred, and this allegation is sufficiently broad to cover the negligence of the city with reference to the street which caused the injury.

4.  Highways—Duty of City to Maintain in Safe Condition for Public Use.—Highways for the use of the public are all necessarily artificial, and the city has the unquestioned duty imposed upon it of maintaining them in a safe condition for public use.

J. L. RICHARDSON, H. O. WILLIAMS for appellant.

W. S. SANFORD, CHAPEZE & CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was originally instituted by Charles W. Sanders for personal injuries sustained April 5, 1909, through the alleged negligence and carelessness of the city in failing to keep its public thoroughfares in a reasonably safe condition.

Sanders died in March, 1911, and there is some proof to show that his death was the direct result of the injuries received. His widow, Elvira Sanders, qualified as administratrix, and revived the action, and elected to prosecute it not for his death, but for the pain and suffering endured, and the expense incurred by reason of the injury.

The accident occurred on what is known as the National Turnpike Road at its intersection with Oakdale Terrace. It is shown by the proof that at this intersection stepping stones for pedestrians extended across the turnpike as extensions of both sidewalks on the Terrace. These stepping stones were firmly seated in the ground, and reached from two to four inches above the surface. For four or five years before the accident, during every

winter and until late in the spring, that part of the turn-pike around and near the stepping stones was a deep and dangerous mud hole reaching from one side of the pike to the other. It could not be avoided by vehicles. This turnpike was the only highway into Louisville for the people of Oakdale and vicinity, unless a detour of four or five miles was made. It follows that all traffic to and from Louisville was forced through this mud hole. It is a matter of common knowledge in such cases, and the proof shows that it is true in this one, that these stepping stones are spaced apart at irregular distances, and that only by accident could a driver get over them without a wheel striking one, particularly so where they are surrounded by a mud hole and constantly be-spattered with the splashing mud, and becoming a part of the mud hole in color at least. Teamsters in their vain efforts to avoid the stones tread the wagon wheels along in the same rut or trench between them, wearing it deeper and deeper. Under these circumstances articles of stone, wood or other substances are likely to fall from passing wagons, and be covered and concealed in the mud to become obstacles in the way of other wagons that follow.

The original petition charges that the city had thrown into this mud hole, apparently for the purpose of filling it, stones, boulders and other solid substances, and that these were entirely covered with mud and thereby hidden and concealed, and that they had also placed in this street the stepping stones referred to; that Sanders did not know of the hidden or concealed obstacles, and could not have discovered them by the use of ordinary care and diligence, and that the city carelessly and negligently permitted the road to be in this dangerous and unsafe condition for many months before the 5th day of April, 1909, when the accident occurred.

The administratrix by an amended petition alleges that Sanders while driving along said road, exercising due and ordinary care for his safety was with "great violence thrown from his said wagon to the ground or street against stones and other hard substances thereby injuring, etc." She further alleges that this injury was "owing to the negligence and culpable carelessness of the defendant, its agents and servants, and dangerous condition of said street or road, and which condition was known to the defendant, its agents and servants, or

should have been known by the exercise of ordinary care.'' Sanders' deposition was taken shortly before his death, and we quote the following as his description of the accident:

"It took place at, or near, Oakdale Terrace. I was driving along with five barrels of slop on my wagon. At this particular place my wagon dropped into a hole, hitting something in front of the wheel, causing the wagon to crank so the wheel rolled up. It hung on to the stepping-stone on top and dropped suddenly over. Being such a high fall, it threw me from my seat, falling directly with my right ankle before the right fore wagon-wheel. The wheel passed over it—the ankle—and it left me unable to support my weight, or any part of my weight, upon it.''

His ankle was broken and badly crushed, and for six months he was confined to his bed. After that time, for a while, he was able to get out of the house, but had to use crutches, and he was in reality a continuous invalid, and required care and nursing from his family until the day of his death, nearly two years. It is shown that during all this time he suffered excruciating pain, and in all probability his death was the direct result of the injury.

The verdict of the jury was for $2,000 damages. There is some complaint that it is excessive. It was the province of the jury to try this question of damage, and it was fairly submitted to them by the court. We will not disturb their finding in view of the facts shown in this record.

It is also objected that it is not shown that the city of Oakdale ever accepted a dedication of, or formally undertook to exercise supervision or control over this street, and therefore, it was not such a public thoroughfare or street of the city as to impose upon it the duty of maintaining it in a reasonably safe condition for public use. There is no act of the city shown in the record where it ever expressly assumed control of the street. It appears, however, that at the time the city was organized and became a corporation, this National turnpike was, and had been for many years before, a public thoroughfare, and so remained, and was used by the public generally at all times. After the turnpike came within the city limits, the city never undertook to close it, nor did it try to divert traffic from it. When it took jurisdiction over the territory, it assumed the burdens

then incident to it, among which, were the maintenance of the public thoroughfares. And the city cannot escape responsibility for this duty unless by some positive act it closes the thoroughfare. Hence we must conclude that this National Turnpike Road was a public street, and it was the duty of the city to keep it in a reasonably safe condition for public use.

It is also urged by the city that the place where the accident occurred on this turnpike road was not within the city limits. An issue is made on this fact by the pleadings. Sanders did have difficulty in proving it. He introduced in the evidence a number of city records, none of them disclosing that this territory was within the city limits. But the proof shows that at least one of the record books of the city is lost, and there is oral testimony to the effect that this lost book contains a record of the city boundary enclosing this territory within its limits. Other testimony including that of the present Mayor of the city, shows that it was considered as within the territorial limits of the city. The city offered no proof to the contrary, hence it stands in proof uncontradicted, that the place of the accident was within the city limits, and there being no issue in the proof on this point, there was no occasion for the court to instruct the jury with reference to it. For that reason the complaint of the city to the court's failure to instruct on the point is not well taken.

The city complains also that there is a variance between the pleadings and the proof, in other words the complaint is that the pleadings charge specific acts of negligence on the part of the city, and the proof shows the injury did not result from these acts of negligence, but from other causes. It is alleged that the city by its officers and agents placed these stepping stones in the street and caused to be thrown into the mud hole stones, boulders and other solid substances, and that these made hidden and concealed dangers. There is no proof to show that the city placed the stepping stones or threw anything into mud holes, or in fact, that the city ever did anything to this street or to these mud holes by way of repair or otherwise. If this was the only negligence charged against the city, the action would fail, for it is a familiar rule that when specific acts of negligence are charged, a recovery will not be permitted for others not charged. We find, however, that the original petition charges that the city was carelessly negligent in per-

mitting this road to remain in a dangerous and unsafe condition for many months before the time of the injury, and the administratrix by an amended petition charges negligence upon the part of the city in the following general terms:

"That while so driving and exercising ordinary care for his own safety, owing to the negligence and culpable carelessness of the defendant, its agents and servants, and dangerous condition of said street or road, and which condition was known to the defendant, its agents and servants, or should have been known by the exercise of ordinary care, the plaintiff was * * * injured, &c."

These allegations in the original and amended petition are sufficiently broad to cover the negligence of the city with reference to the street which caused this injury, and that the city was negligent is a conclusion that can hardly be escaped. This mud hole, in conjunction with the stepping stones that the city permitted to remain there for such a great length of time, were a constant source of danger to all vehicle traffic. We do not mean to say that the stepping stones of themselves, and alone were dangerous, or that the city was negligent in permitting the stepping stones to remain there, although it is a form of street crossing not to be commended. But with the knowledge that these stepping stones were there, it was certainly negligence to permit the mud hole to form and remain around them. The city cites several cases decided by this court wherein it was held that a step in a sidewalk, or a step by the side of a walk, and over which a pedestrian had fallen and suffered injuries, was not *per se* negligence, because they were such obstacles that a pedestrian exercising any care could, or ought to see, and avoid. In the cases referred to the step was obvious and easily avoided. The proof, however, in this case shows that no amount of care or caution upon the part of the traveler permitted him to avoid the mud hole or to see, or detect the concealed obstacle. The court fairly instructed the jury on the question of negligence of the city in permitting the street to remain in a dangerous condition, if it was dangerous, and the verdict of the jury cured any defect in the pleading on this point.

The case of Louisville v. Brewer, 24 K. L. R., 1671, (72 S. W. 9) is one in principle very similar to this. In that case it is decided that a public thoroughfare com-

ing into the city by annexation or upon its organization as a city, remains a public thoroughfare, and the old maxim "once a highway always a highway" is applied, although the city might not formally declare it to be a public thoroughfare, or exercise any act of control over it. It also sustains our conclusion that if there was any defect in the pleadings, it was cured by the verdict of the jury.

The city insists that since it had never undertaken to repair, or reconstruct this turnpike road, it has, therefore, committed no act, negligent or otherwise, for which an injury occurring on the road could be chargeable to it, and having assumed no control over it, no responsibility can be placed upon the city. To support this contention it relies upon the cases of Teager v. Flemingsburg, 109 Ky., 746. Breckman v. Covington, 143 Ky., 440. Campbell v. Vanceburg, 30 K. L. R., 1343. Harney v. Lexington, 130 Ky., 253. All of these cases are for injuries to property caused by flood water, and improper drainage. These cases hold that where the city has by street construction, or repair, diverted water from its natural course, or by sewer construction has provided insufficient drainage to the damage of property owners, there is a liability upon the city. They also hold that there is no liability upon the city to provide drainage facilities in the first instance. That is, that property owners must take and care for the water fall and flow that comes through its natural channels, and that unless the city undertakes to provide for it by artificial means, and negligently fails to provide sufficient means, or unless the city by improvement, or reconstruction of the street, diverted the water flow from its natural course, and negligently fails to provide proper drainage for the diverted water so that injury might be saved to adjacent property owners, then there is no liability upon the city. In short, on question of drainage, the city is not liable for its failure to make new improvements, or its failure to alter or reconstruct old ones, such as came into it by annexation or organization. It may leave these just as it found them. But this rule of drainage cannot be applied to public highways. A city may not be required to provide artificial drainage, but highways for the use of the public are all necessarily artificial, and the city has the unquestioned duty imposed upon it of maintaining these artificial highways in a safe condition for public use.

The Brewer case supra, shows that a public thoroughfare taken into the city by annexation or upon its organization, continues to be a public thoroughfare of the city, and this duty of maintenance rests upon the city, although it may never have undertaken to repair or reconstruct it.

For the reasons indicated the judgment is affirmed.