The CITY OF PIONEER VILLAGE, Appellant,

v.

BULLITT COUNTY, By and Through the BULLITT FISCAL COURT, Hon. Kenneth J. Rigdon, Judge/Executive Presiding, Appellee.

No. 2001–SC–0759–DG.

Supreme Court of Kentucky.

March 20, 2003.

Rehearing Denied June 12, 2003.

Norman R. Lemme, Lemme & Conway, Shepherdsville, for Appellant.

Walter A. Sholar, Bullitt County Attorney, Michael J. Leibson, Richard C. Gibson, Shepherdsville, for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a judgment on the pleadings granted by the Bullitt Circuit Court.

The principal question presented is whether a county has the duty, or even the legal authority, to maintain a county road after that road is included in property annexed by a city. Conversely, does a city that annexes territory containing a county road undertake a duty to maintain that road. Other questions include whether the Court of Appeals properly affirmed the order of the circuit judge granting a judgment on the pleadings pursuant to CR 12.03; whether provisions of KRS Chapter

178 regarding the discontinuance of a county road apply in this case; and whether Bullitt County is entitled to sovereign immunity.

The City of Pioneer Village, a city of the fifth class, was incorporated more than twenty-five years ago. Shortly thereafter, it annexed unincorporated territory in Bullitt County. The annexed property included several county roads, including Summitt Drive. Prior to the annexation, Summit Drive had been accepted as a county road and it was maintained by the county after annexation as part of the county road system until this dispute arose in 1998.

In a letter dated April 22, 1998, the office of the Bullitt County Judge/Executive notified Pioneer Village that Bullitt County would no longer maintain Summitt Drive as well as Somerset Drive and Summers Drive in the absence of an inter-local agreement. The letter stated that the action was taken pursuant to information received from the Kentucky Department of Transportation which indicated that continuing to service those roads would not be legal. The letter also advised that the county would continue to provide maintenance for an additional 60 days in order to allow Pioneer Village to work out an inter-local agreement with the county if it chose to do so.

The city and the county were unable to reach an agreement, with Pioneer Village taking the position that maintenance of the roads was the responsibility of the county. Summitt Drive, a connector road for Maryville Elementary School which serves children both within the city and the county at large, began to deteriorate with neither side making repairs. In early 1999, Bullitt County repaired the road and billed Pioneer Village for the cost of repairs in the amount of $1,772.52. The city paid the bill under protest and brought this action in the circuit court seeking reimbursement of the bill plus interest; an order declaring the closing of the road void; an injunction precluding the county from expending any funds until the road was repaired and attorneys' fees.

The circuit judge entered a judgment on the pleadings in favor of Bullitt County. The Court of Appeals affirmed the circuit judge, holding that it is a well-established principle that roads annexed into a city become city streets with the duty of maintenance being imposed on the city. It rejected the contention by the city that the road was unlawfully discontinued in violation of KRS 178.070. This Court accepted discretionary review.

## I.  Judgment on the Pleadings

Civil Rule 12.03 provides that any party to a lawsuit may move for a judgment on the pleadings. The purpose of the rule is to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute. It is designed to provide a method of disposing of cases where the allegations of the pleadings are admitted and only a question of law is to be decided. The procedure is not intended to delay the trial in any respect, but is to be determined before the trial begins. The basis of the motion is to test the legal sufficiency of a claim or defense in view of all the adverse pleadings. When a party moves for a judgment on the pleadings, he admits for the purposes of his motion not only the truth of all his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also the untruth of all his own allegations which have been denied by his adversary. *Archer v. Citizens Fidelity Bank & Trust Co.*, Ky., 365 S.W.2d 727 (1963). The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief. *Cf. Spencer v. Woods*, Ky., 282 S.W.2d 851 (1955).

Here, the circuit judge applied the rule set out in *Archer, supra* and *Sheffer v. Chromalloy Mining & Mineral,* Ky.App., 578 S.W.2d 594 (1979). The circuit judge considered the written and oral arguments of both parties and examined the law and found that upon the annexation of the roads in question, the city became responsible for their maintenance. The facts were not in dispute and the circuit judge did not commit error in his application of the law to the facts.

## II. Roads Not Discontinued

■ Pioneer Village contends that the actions of the county constitute an unlawful discontinuance of a county road. We find this argument to be without merit.

The Court of Appeals correctly held that Bullitt County did not discontinue or close the roads which were annexed by the city. Under the facts here, the provisions of KRS Chapter 178 regarding the discontinuance of a road do not apply. In a situation involving annexation, the county is not required to follow the procedures established in KRS 178.050 and 178.070. Those statutes relate to the closing of a county road so as to make it unusable by the public. The roads in question have not been discontinued but only their legal character has been changed by the annexation proceeding from county roads to city roads or streets, and as such they are under the exclusive control of the city. Consistent with KRS 178.010(2), the city has the authority to direct the use of the roads as long as they remain within the city limits.

## III. KRS 178.010

■ KRS 178.010(1)(b), which was amended in 1964, defines a county road as a public road which has "been accepted by the fiscal court of the county as a part of the county road system after July 1, 1914, or private roads, streets, or highways, which have been acquired by the county

pursuant to KRS 178.405 to KRS 178.425. . . ." Prior to the 1964 amendment, KRS 178.010 defined county roads as "all public roads outside the incorporated cities, except primary roads and federal parkways."

Among the changes in the statute, the city notes that the language "outside of incorporated cities" was eliminated. Consequently, it argues that after the 1964 amendment, the annexation of a county road by a municipal corporation does not relieve a county of its responsibility of maintaining that road. It contends that the amendment renders the case law prior to 1964 obsolete. We disagree. There has been no significant or fundamental change in the statutory language which aids the position of the city.

Although it involves a city of the sixth class, we find the opinion of the Attorney General, OAG 68–506, to be instructive. It was issued in 1968 after the 1964 statutory changes were made amending KRS 178.010(1)(b). That opinion determined that when an area containing a county roadway is annexed by a city, the maintenance and upkeep of that roadway goes to the annexing city and does not remain with the county. It cited 62 C.J.S. *Municipal Corporations* § 76 (now § 70 (1999)) as follows:

Property annexed to a municipal corporation is subject to use for streets and alleys. Also, the municipality acquires streets, alleys, highways, bridges, and other public ways in the annexed territory, and may regulate and control their use . . . to the exclusion of the authorities of the political subdivision formerly exercising control. On the other hand, the municipality takes such public ways in trust for the public, subject to established grades and rights reserved by a dedicator, and there are imposed on it the same municipal duties and liabilities

as to streets, highways, and bridges to the annexed territory as rest on it with respect to those in the original territory. . . .

Kentucky law has consistently upheld the position of Bullitt County and we find no reason to change that position. One of the earliest cases occurred one hundred years ago in the seminal decision of *City of Louisville v. Brewer's Adm'r*, 24 Ky. Law Rep. 1671, 72 S.W. 9 (1903). In that case it was held that a county road in property annexed by the city of Louisville became a street of the city upon annexation. The court also held that the city became "chargeable with all the duties with reference thereto that they owe to any public streets and alleys of the municipality; that formal recognition of this fact by a resolution of its board of council was wholly unnecessary." *Id.* at 10.

In *City of Oakdale v. Sanders' Ex'x*, 155 Ky. 352, 159 S.W. 812 (1913), it was held that when a city took jurisdiction over territory, it assumed the burdens then incident to it, among which were the maintenance of public thoroughfares. Later, *City of Ashland v. Cummings*, 194 Ky. 645, 240 S.W. 63 (1922), held that "upon the annexation of the territory, Church street became a public street of the city without formal action on its part, with the consequent duty on the part of the city to use ordinary care to maintain . . . ." *Cummings, supra,* cited with approval *Brewer's Adm'r, supra* and *Sanders' Ex'x, supra.* For the same proposition, *see also, Lewis v. City of Whitesburg*, 253 Ky. 480, 69 S.W.2d 989 (1934); *Tolliver v. Louisville & Nashville R.R. Co.*, 226 Ky. 132, 10 S.W.2d 623 (1928); *City of Louisville v. Flanders*, 225 Ky. 41, 7 S.W.2d 514 (1928). *Whitesburg, supra,* held that a county road that traversed territory later annexed by the city became a city street without formal action of the city. Similarly, in *Tolliver, supra,* the court stated that when territory becomes a part of the town, the established highways which the public has acquired the right to use automatically become highways within the town.

The lengthy arguments and authorities cited by the city, although scholarly, are unconvincing and provide no legal basis helpful to its position. It is abundantly clear that the courts of Kentucky have determined on numerous occasions that a road, county road, public road, or county or public highway are terms that can be used interchangeably. *See Gernert v. City of Louisville*, 155 Ky. 589, 159 S.W. 1163 (1913), *citing City of Louisville v. Hall*, Ky., 91 S.W. 1133 (1906). The principle of law that arises from all of these authorities is that once a city annexes a road it is the responsibility of the city to maintain that road.

## IV. Sovereign Immunity

The Court of Appeals made no decision regarding the position of the county that it is immune from a claim for monetary damages in this matter. In view of our decision, the question of sovereign immunity is moot.

It is the decision of this Court that once county roads are annexed into a city, they become city streets with the duty of maintenance being imposed on the city. The rulings of the circuit court and the opinion of the Court of Appeals are affirmed.

All concur.