RENDERED: OCTOBER 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-1150-MR

KELLY GREGORY BLACKWOOD                          APPELLANT

v.            APPEAL FROM MCCREARY CIRCUIT COURT
HONORABLE PAUL K. WINCHESTER, JUDGE
ACTION NO. 17-CI-00056

BOBBY BRIAN BLACKWOOD                           APPELLEE

OPINION
AFFIRMING IN PART AND
REVERSING IN PART

** ** ** ** **

BEFORE: CETRULO, DIXON, AND McNEILL, JUDGES.

DIXON, JUDGE: Kelly Gregory Blackwood appeals from the order denying her motion to alter, amend, or vacate the July 15, 2022, Findings of Fact, Conclusions of Law, Judgment, and Order requiring her to pay Bobby Brian Blackwood (Brian) $159,104.61, plus interest, entered by the McCreary Circuit Court on September

15, 2022. After a careful review of the record, briefs, and applicable law, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

Kelly and Brian were married in 2005. In 2017, Brian petitioned the court to dissolve their marriage. Kelly, *pro se*, entered an appearance and waiver. Shortly thereafter, Kelly and Brian entered a six-page separation and settlement agreement detailing how their assets and liabilities were to be divided. The court found the agreement was not unconscionable and incorporated it into its decree of dissolution.

In June 2021, Brian moved the court for a hearing regarding monies he claims Kelly owed, pursuant to their agreement, for her share of the home repairs and expenses prior to its sale. In July 2021, Brian moved the trial court via an emergency ex parte motion to order that a portion of Kelly's proceeds from the sale of their home be held in escrow until such time as the amount Kelly owed could be determined. The court granted the motion.

In August 2021, Brian moved the trial court to compel Kelly to return the refrigerator awarded to her in the settlement agreement and to reimburse him for replacing a water line cut when the refrigerator was removed. He also requested reimbursement for other items Kelly removed from the home prior to its sale, as well as his attorney's fees. The following week, an attorney entered an

-2-

appearance on behalf of Kelly. An agreed order was entered continuing the hearing, citing "the parties needing additional time to do discovery[.]" One week later, Kelly served Brian with her first set of interrogatories and requests for production.

In early October 2021, Brian answered Kelly's written discovery and moved the court for "reimbursement, indemnification, payment, credit and offset" for various things, including a medical bill he paid on Kelly's behalf, payments to a debt collection agency on her behalf, $2,000 he gave Kelly to make a down payment on a new car, compensation for her taking the better of the two laptops, remuneration for Kelly taking a sofa and recliner awarded to Brian in the settlement agreement, and compensation for Kelly taking a "majority of the items of personal property/home furnishings that were to be sold." The following day, Brian propounded his first set of interrogatories and requests for production of documents to Kelly. A few days later, Brian filed a notice to continue/pass the hearing since "the matter is not yet ready for final hearing as the parties are currently exchanging discovery related to the . . . motion[.]"

In April 2022, Brian propounded requests for admission to Kelly.[1] Brian also moved the court to compel Kelly to answer his October 2021 discovery

---

[1] The original certificate of service states the requests for admission were served on October 14, 2022, but was later "corrected" to October 14, 2021. However, the requests for admission were not filed with the trial court until April 14, 2022.

requests and pay his attorney's fees. Over one month later, Kelly's counsel moved the court to withdraw. Brian responded a few weeks later with no objection to the attorney's withdrawal but requested that Kelly be given 10 days to find new counsel because 19 days had lapsed since filing of the motion. The trial court allowed counsel to withdraw and gave Kelly 14 days to obtain new counsel.

Finally, in July 2022, Brian moved the trial court to take judicial notice of Kelly's failure to respond to the requests for admission and requested a judgment on the pleadings. The court entered its Findings of Fact, Conclusions of Law, Judgment, and Order granting Brian's motions and awarding him $159,104.61, plus interest. The following week, new counsel made an appearance on behalf of Kelly and moved the trial court to alter, amend, or vacate its order. Brian objected, and the motion was denied. This appeal followed.

## STANDARD OF REVIEW

Under CR[2] 12.03, "any party to a lawsuit may move for a judgment on the pleadings." *City of Pioneer Vill. v. Bullitt Cnty.*, 104 S.W.3d 757, 759 (Ky. 2003). A judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief." *Id.* The trial court is "not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875,

---

[2] Kentucky Rules of Civil Procedure.

883-84 (Ky. App. 2002).  We review a judgment on the pleadings *de novo*.  *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 177 (Ky. 2012).

Even so, CR 12.03 requires that a motion in which matters outside the pleadings are considered be treated as a motion for summary judgment.  *Craft v. Simmons*, 777 S.W.2d 618 (Ky. App. 1989).  *See Cabinet for Human Res. v. Women's Health Servs., Inc.*, 878 S.W.2d 806 (Ky. App. 1994) (motion to dismiss treated as a motion for summary judgment because the court considered an affidavit in support of the motion).  In the case herein, affidavits and other documents beyond public records were provided to the circuit court.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56.03. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor."  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

An appellate court's role in reviewing an award of summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists, and the moving party was entitled to judgment as a matter of law.

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

Here, we review the facts in a light most favorable to Kelly and resolve all doubts in her favor. Applying the *Steelvest* standard, and based on the record, we agree with the trial court that there was no genuine issue of material fact. Therefore, we conclude that a judgment on the pleadings or summary judgment was appropriate.

## LEGAL ANALYSIS

Kentucky Revised Statutes (KRS) 403.180(2) provides that the terms of a separation agreement, "except those providing for the custody, support, and visitation of children, are binding upon the court[.]" KRS 403.180(5) specifies the "[t]erms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." The terms of a separation agreement should be enforced as contract terms. *Bailey v. Bailey*, 231 S.W.3d 793, 797 (Ky. App. 2007).

On appeal, Kelly directs us to the language of the separation and settlement agreement. In relevant part, it provides:

> Parties are that agree real property #1 should not
> remain vacant in order to prevent property from falling

into a state of disrepair, and to prevent break-ins and vandalism. Parties agree further that property #1 requires work in order to get the property into its best condition for marketable sale at the highest price. Therefore, and to that end, parties are in agreement that during the time they are improving the condition of property #1, that they shall both reside under the same roof, but separate and apart with no co-habitation, on property #1 and shall share equally all costs associated with property #1. The parties agree further that when they are satisfied and in agreement that property #1 is ready to be placed in the market for sale that Respondent [Kelly] shall relocate away from [the] property #1. Parties agree further that after property #1 is in good condition for sale, and until such time as the property is sold, that Petitioner [Brian] will occupy [the] property and will keep the property in good condition and will perform necessary upkeep. **Until such time as the property is sold, mortgage payments shall be paid monthly by the Petitioner [Brian].**

**Parties are in agreement that all out of pocket insurance payments, property taxes and utilities on [the] real property #1 shall be paid by the Petitioner [Brian].** Parties agree further that in the event that one party is required to pay for repairs to the property prior to its sale, insurance, and/or property taxes, that party shall be reimbursed ½ the amount paid.

(Emphasis added.)

Brian's motion for a judgment on the pleadings sought reimbursement from Kelly in numerous categories, including $10,403.67 for property taxes, $1,480.10 for "forced place" insurance, and $3,072.95 for mortgage insurance, (a total of $14,956.72). Under the parties' agreement, Brian was to pay these expenses; therefore, Kelly should not have been ordered to reimburse him in

-7-

contravention of their agreement.[3]  Accordingly, we must reverse the trial court's order to the extent that it awarded Brian $14,956.72 for property taxes, "forced place" insurance, and mortgage insurance.

Kelly also argues that the trial court ordered her to pay Brian $152,504.61 without presenting any type of specific breakdown, listing any findings of fact related to this specific amount, or any explanation of what expenses are included in this figure.  Brian provided the number adopted by the trial court.

Brian's first motion, filed in June 2021, contained no specific amount owed by Kelly.  In July 2021, however, his motion and affidavit asserted that Kelly owed him no less than $55,000, though no supporting documentation was provided.  In August 2021, Brian's motion requested $2,500 from Kelly to replace the refrigerator awarded to her in the settlement agreement, $75 to replace the line that was cut, $500 for the John boat, $150 for cleaning, and $750 in attorney's fees.  In his October 2021 discovery responses, Brian asserted that Kelly owes him $151,045.01 and explained his rationale for this figure, even though it included expenses that were not reimbursable under the parties' settlement agreement –

---

[3]  Brian also claims Kelly owes him for monies he gave her to pay the first and second mortgages.  He alleges that Kelly pocketed the money instead of making those payments.  Brian should have followed their agreement and paid the mortgages himself instead of going through Kelly; even so, we will not deprive Brian of reimbursement for monies he gave to Kelly that she did not use to make mortgage payments as he intended.

$10,403.67 for property taxes, $1,409.00 for "forced place" insurance, $3,072.95 for mortgage insurance, and $42,062.88 for "1/2 1st mortgage payment for 48 months" (a total of $56,948.50).

By the time Brian moved the trial court for a judgment on the pleadings in July 2022, he revised the total amount Kelly owes him to $152,504.61 and listed a summary of the expenses in a table, including $10,403.67 for property taxes, $1,480.10 for "forced place" insurance, and $3,072.95 for mortgage insurance. As previously mentioned, because Brian was responsible for those expenses under the parties' agreement, we reverse that portion of the trial court's award. The other amounts, however, appear to be allowed under the parties' agreement and are supported by substantial evidence. Thus, we must affirm the remainder of the award.

Kelly further contends that the trial court erred in not conducting an evidentiary hearing and essentially treating this matter as a default judgment. Yet, she fails to explain why she believes a hearing was required. Brian submitted numerous exhibits supporting the amounts he alleges Kelly owes. Kelly had over one year to object or submit proof but failed to do so. Moreover, Kelly's failure to respond to Brian's requests for admissions have the legal effect of admitting them.

In pertinent part, CR 55.01 provides:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to

-9-

determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court, without a jury, shall conduct such hearings[.]

"In other words, the court ***may*** need to conduct a hearing to determine the amount of damages owed to a plaintiff." *Key v. Mariner Fin., LLC*, 617 S.W.3d 819, 823 (Ky. App. 2020) (emphasis added). There are times when a hearing is not required.

In the case herein, Brian submitted substantial evidence of the amounts Kelly owed him. Kelly failed to object or present conflicting evidence and effectively admitted Brian's requests for admission, which support his allegations. Therefore, a hearing was neither needed nor required.

Even so, as previously discussed, we cannot affirm the portions of the award contrary to the parties' settlement agreement, such as the $14,956.72 relating to reimbursement of property taxes, "forced place" insurance, and mortgage insurance. Furthermore, in addition to the award of $152,504.61, the trial court awarded Brian $4,100.00. A breakdown of those expenses was provided by Brian in his motion for a judgment on the pleadings – $2,000 for Kelly taking the refrigerator awarded to her, $1,500 for Kelly taking a leather sofa awarded to Brian, $500 for Kelly taking a John boat awarded to Brian, and $100 for the time, labor, and cost of cleaning up trash left by Kelly in the house the day prior to its sale. Because Kelly was awarded the refrigerator, she should not have to pay

-10-

Brian $2,000 for it. Accordingly, we must reverse this portion of the trial court's award as well.

Kelly also argues that she was not required to answer discovery. This is a curious contention as there appears to be no allegation of error by the trial court regarding this issue. Nonetheless, Kelly cites *Combs v. Daugherty*, 170 S.W.3d 424 (Ky. App. 2005), in which one party did not file any motion to modify child support before serving a discovery request on the other. *Id.* at 426. Here, Brian filed multiple motions; therefore, *Combs* is inapplicable. Moreover, it was at ***Kelly's*** request, and via an agreed order, that the hearing on Brian's motion was continued to allow the parties to conduct discovery. Both parties served discovery on the other. Brian answered Kelly's discovery; Kelly did not reciprocate. As a result, all the information before us regarding the expenses was provided by Brian, none of which was contested by Kelly. Consequently, Kelly's refusal to participate in discovery prevented her from lessening her damages.

Kelly's final argument is that the trial court abused its discretion when it allowed her counsel to withdraw at a critical time in the proceedings and then only granted her 14 days to obtain new counsel. On April 14, 2022, Brian moved the trial court to compel Kelly's responses to his discovery requests that were overdue since November 2021 and noticed the hearing for June 13, 2022. Then, 44 days later, on May 25, 2022, Kelly's counsel moved the trial court to withdraw and

-11-

requested 30 days for Kelly to obtain counsel, also noticing the hearing for June 13, 2022 – 19 days later. While Brian responded to this motion, Kelly neither responded nor objected. The attorney's motion was granted, and the court gave Kelly another 14 days to obtain counsel – a total of **33 days** from the time the motion was filed.

Brian did not file his motion for a judgment on the pleadings until July 7, 2022 – another **10 days _after_ the time granted Kelly to obtain counsel**. The motion was noticed to be heard on July 11, 2022 – 47 days after Kelly's counsel moved to withdraw, 28 days after the motion was granted, and 14 days after the period granted Kelly to obtain counsel had expired. Kelly appeared, _pro se_ – although, not until the afternoon when the hearing had been held that morning – and was advised by the trial court to act **_immediately_**. It entered its judgment four days later. Six days after the order was entered, new counsel made an appearance on behalf of Kelly and moved the trial court to alter, amend, or vacate its order.

Kelly had adequate time to obtain counsel and has given no reason why she was unable to do so in the time provided by the trial court. Consequently, we cannot say the court deprived Kelly of due process or committed reversible error in allowing her counsel to withdraw and giving her 14 days to obtain new counsel.

**CONCLUSION**

Therefore, and for the foregoing reasons, the order of the McCreary Circuit Court is hereby AFFIRMED in part and REVERSED in part to the extent the trial court awarded Brian $14,956.72 relating to reimbursement for payments of taxes, "forced place" insurance, and mortgage insurance, as well as $2,000 for the refrigerator awarded to Kelly.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christy L. Shannon
Stephanie A. Trantham
London, Kentucky

BRIEF FOR APPELLEE:

Sandra J. Reeves
Corbin, Kentucky