RENDERED:  OCTOBER 24, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

### NO. 2024-CA-1246-MR

UNIVERSITY OF LOUISVILLE                    APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 24-CI-003178

KRZYSZTOF WOLEK                          APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND L. JONES, JUDGES.

ECKERLE, JUDGE:  Appellant, University of Louisville (the "University"), challenges the Jefferson Circuit Court's order denying its motion for judgment on the pleadings.  The Trial Court concluded that Appellee, Krzysztof Wolek ("Wolek"), filed suit within the General Assembly's prescribed one-year waiver of governmental immunity as enumerated in the Kentucky Campus Free Speech Protection Act (the "Act"), Kentucky Revised Statute ("KRS") 164.348 *et seq.*

This Court, having been fully briefed on the matter and carefully considering the merits, hereby affirms the Jefferson Circuit Court's Order.

FACTUAL AND PROCEDURAL BACKGROUND

The factual underpinnings of this appeal consist of Wolek's expression of speech concerning the University's administration of the Grawemeyer Award for Music Composition (the "Award") and subsequent actions and responses. The procedural posture of this appeal is consequential. Thus, as this Court reviews the Trial Court's order denying the University's motion for judgment on the pleadings, our factual recitation focuses on the allegations that Wolek pled in his complaint, along with the University's admissions, denials, and defenses as pled in its answer.

To begin, in December of 2021, then-acting Award Director Marc Satterwhite ("Satterwhite") announced his retirement. The Award is a prestigious, monetary prize that the University gives annually to an outstanding creator of musical compositions. The Award Director position facilitates the Award application and selection process. At the time of Satterwhite's retirement announcement, Wolek was a tenured professor at the University's School of Music. Wolek also served as a member of the Composition and Creative Studies

Department ("CCS").[1] Upon information of Satterwhite's retirement, Wolek expressed interest in the Award Director position and alleged to have received the unanimous nomination of CCS faculty to fulfill the vacant role. The University, however, averred in its answer that there is no formal hiring or nomination process for the Award Director position. Nonetheless, in January of 2022, Wolek submitted his candidacy for the Director position to the Dean of the University's School of Music, Dr. Teresa Reed ("Reed").

In February of 2022, CCS Department Chair Jerry Tolson ("Tolson") announced that the University selected Matt Ertz ("Ertz"), an external candidate, to succeed Satterwhite as the Award Director. Wolek transmitted a response to the announcement expressing his disapproval with the University's decision to hire Ertz. Wolek's email allegedly included the original recipients of Tolson's announcement email. In turn, Reed replied to Wolek's email, including the same email recipients, stating the following: "The message you received from Dr. Wolek is just the latest iteration of a pattern of behavior to which he resorts to canvassing support for his position when decisions are not to his liking." Trial Record ("TR"), p. 2.

---

[1] Wolek's complaint refers to the "CCS," but fails to provide the full name for the department acronym. This Court obtained the full name by reviewing Wolek's subsequent, non-pleading filings.

We now focus on the crux of Wolek's cause of action as pled in his complaint. Wolek's central allegations concern the 2023 Award recipient process, not to be confused with his criticisms discussed above regarding the University's 2022 hiring of Ertz as the Award Director.[2] More specifically, in February of 2023, Wolek emailed Tolson and Reed ("Wolek's Email to Tolson and Reed") to express concerns that the Award recipient selection process was incompliant with the requisite policies and procedures. In this email, Wolek requested a meeting with Reed and Tolson to discuss the matter. Reed responded to Wolek's email by demanding that he produce information and evidence supporting his allegations within 24 hours. Wolek alleged that he was unable to comply with Reed's request within her commanded timeframe. Wolek further alleged that Reed reacted to his email "in an adversarial and demeaning manner." TR, p. 3.

On March 7, 2023, Reed transmitted an email regarding the Award selection process to CCS faculty ("Reed's March Email"), which is crucial to our analysis *infra.* Wolek alleged in his complaint that Reed's March Email stated the following: "Kindly refrain from discussing the [Grawemeyer] award's structure,

---

[2] To avoid confusion, we find it necessary to highlight that Wolek's complaint alleged that the University violated the Act in relation to his protected speech regarding the Award *selection* process, a process distinct from the Award Director *hiring* process. To clarify, Wolek's February 2022 email, and Reed's February 2022 response to the same, concerned Wolek's disapproval of the University's *hiring* process, including its selection of Ertz as the Award Director. It was not until one year later, in February of 2023, and again in March of 2023, that Wolek avers to have engaged in alleged protected speech pertaining to the selection of the Award *recipient* process.

rules, and procedures." TR, p. 3 (alteration in original). The University's answer, on the other hand, incorporated the full language of Reed's March Email by reference and attached exhibit, which reflects the following language: "Friends; Questions surrounding the Grawemeyer committee structures, rules, and procedures are under review. Until advice from University Counsel is complete, kindly refrain from discussions, plans, and proposals related to revising the current practice of the Grawemeyer Music Award." TR, p. 122.

On March 26, 2023, Wolek emailed his colleague, Dr. Barry Johnson ("Johnson"), regarding the Award (the "Email to Johnson"). Wolek's Email to Johnson criticized his anonymous service as one of three judges for the Award recipient, described CCS faculty's collective choice to refrain from judging the Award, communicated his disapproval of Johnson's involvement in serving as a judge, requested Johnson's alignment with CCS faculty's objectives, stated disagreements with the actions of the University's leadership, and highlighted the need for transparency in the Award selection process.

Two days later, on March 28, 2023, Wolek received a request to engage in a Faculty Accountability Policy ("FAP") investigation. Wolek alleges that the FAP request included language "reiterat[ing] Dr. Reed's 'request and expectation' to not discuss the Grawemeyer Award." TR, p. 3. On April 5, 2023, Wolek received the actual FAP charges via email. Wolek alleges that the

investigation concerned his Email to Johnson, which the FAP charges summarized as "unprofessional and disruptive to the work environment." TR, p. 3.

On May 3, 2023, Wolek met with Tolson and Reed to discuss the results of the FAP investigation. During the meeting, Reed issued Wolek a verbal warning, cautioning that emails similar to the Johnson Email would result in progressively harsher discipline, up to, and including, termination (the "FAP Discipline"). Importantly, Wolek also alleges that on May 8, 2023, he emailed Reed "appealing the FAP process and its findings," to which Reed immediately responded confirming the FAP findings and stating the proceedings were concluded. TR, p. 3. The University's answer avers that Wolek's email did not appeal the FAP findings and conclusion; rather, Wolek requested "that the verbal warning be rescinded." TR, p. 118. The University claimed that "Reed e-mailed [Wolek] stating that the verbal warning will stand and that the [FAP] process had concluded." TR, p. 118.

On May 6, 2024, Wolek filed the instant lawsuit alleging that the University violated the Act. Wolek based his complaint on two expressions of speech: Wolek "engaged in protected speech when he [1] emailed Dr. Johnson, expressing his professional concerns regarding the administration's handling of the Grawemeyer Award [*i.e.*, the Email to Johnson], and [2] when he complained of compliance issues to Tolson and Dr. Reed [*i.e.*, Wolek's Email to Tolson and

-6-

Reed].”  TR, p. 4.  Wolek alleged that the University violated the Act by “retaliat[ing] against Wolek  . . .  [b]y labeling Wolek’s emails as ‘disruptive’ and taking disciplinary action against him for his emails . . . .”  TR, p. 4.  Wolek sought compensatory and punitive damages as a result of the University’s actions.  In addition, Wolek’s complaint sought injunctive relief prohibiting the University from engaging in conduct in derogation of the Act.

The University responded to Wolek’s complaint with a motion to dismiss pursuant to Kentucky Rule of Civil Procedure (“CR”) 12.02(f).  The University based its motion on three independent grounds.  First, and germane to the basis of the appeal *sub judice*, the University argued that Wolek’s complaint is time-barred pursuant to the one-year statute of limitations espoused in KRS 164.348(3)(b).  Second, the University claimed that Wolek’s complaint improperly “split” causes of action arising from a single transaction.[3]  Third, the University asserted that Wolek failed to state a claim upon which relief could be granted.

In response, Wolek argued that he had filed suit timely.  Wolek admitted that his injury occurred on May 3, 2023, the date of the FAP Discipline, but denied that his cause of action accrued on that date.  Wolek underscored the

---

[3] In February of 2024, Wolek commenced suit in Federal Court, asserting claims under the First Amendment to the United States Constitution and under the Act.  *Krzysztof Wolek v. University of Louisville*, Case No. 3:24-cv-138-DJH, United States District Court for the Western District of Kentucky.  Following the University’s motion to dismiss, the Federal Court dismissed the complaint, declining to exercise pendent jurisdiction over Wolek’s state-law claim.

-7-

Act's limitations language, which states that accrual occurs "at the point in time the violation ceases or is cured by the institution." *See* KRS 164.348(3)(b). Wolek reasoned that the University's violation of the Act is ongoing, as there is no specific date in which it ceased or cured the alleged violation. Principally, Wolek argued that his claim cannot be time-barred because Reed's March Email constituted a "gag order regarding discussing the Grawemeyer Award [that] is seemingly still in effect." TR, p. 66. To summarize Wolek's response, as opposed to his complaint, he asserted that the Act's violation date occurred upon Reed's March Email (March 7, 2023), with the date of injury occurring on May 3, 2023, when he received the FAP Discipline. Further, and significantly, Wolek argued that his cause of action did not accrue on May 3, 2024; rather, it continues to accrue, as the University has not cured or ceased Reed's March Email directive.

On July 11, 2024, the Trial Court issued its ruling, denying the University's motion to dismiss, concluding that a reasonable person could surmise that Wolek's injury is ongoing and will continue to occur. The Trial Court made no determination as to the accrual date. Instead, the Trial Court found that Wolek remains subject to the "supervisory order" of Reed's March Email. TR, p. 107. The Trial Court reasoned that "[w]hether it was ordered with 'kindly' at the front or not, this is a direct restriction on [Wolek's] right to speech that endures to the time of this writing." TR, p. 107. Regarding the issue of ripeness due to the

-8-

ongoing nature of Wolek's alleged injury, the Trial Court concluded that the Act's language of limitation does not lead to an absurd result, as claimants may seek injunctive relief to forestall continuing violations.[4]

The University subsequently filed its answer and incorporated by reference and attachment the following exhibits: (1) Reed's March Email, exhibiting conflicting language from that which Wolek alleged in his complaint; (2) a follow-up email from Reed to CCS faculty, dated March 31, 2023, advising that University counsel's review found the Award application and selection process was compliant with the applicable rules and endowment agreement, with there being no evidence of procedural or legal violations (the "Counsel Findings Email"); and (3) Wolek's Email to Johnson. In its answer, the University admitted to the majority of Wolek's alleged, material facts but denied allegations that the FAP Discipline was based on anything other than Wolek's Email to Johnson. The University specifically disclaimed that it disciplined Wolek for violating Reed's March Email. The University posited that the FAP Discipline merely cautioned Wolek to halt sending future unprofessional and disruptive emails to colleagues.

---

[4] In an abundance of caution, considering that immunity was not then at issue, the University filed a motion to alter, amend, or vacate the Trial Court's order, requesting removal of final and appealable language pursuant to CR 59.05. The Trial Court amended its order, *nunc pro tunc*, to remove this finality language.

On October 14, 2024, the University filed a motion for judgment on the pleadings pursuant to CR 12.03. The University argued that Wolek's claims are barred by governmental immunity. Particularly, the University argued that the Act provided a limited waiver of governmental immunity extending for one-year from the date of the cause of action's accrual. Having provided an answer, the University argued that Wolek's claim accrued, at best, on May 3, 2023, when Wolek received the FAP Discipline. The University's arguments mirrored those that it had asserted at the motion-to-dismiss stage. In addressing the Trial Court's prior order that Reed's March Email constituted an ongoing violation, the University argued that it ceased or cured the alleged injury via the Counsel's Findings Email dated March 31, 2023. The University further claimed that Wolek's continuous-injury accrual date is legally untenable, as such action is unripe and premature under the law. Thus, the University maintained that under any interpretation of the pleadings, including the exhibits that the University attached and incorporated in its answer, Wolek's complaint, dated May 6, 2024, was filed after the expiration of the Act's immunity waiver.

The Trial Court denied the University's motion that very same day. In fact, Wolek asserts that he had no time to file a response to the University's motion prior to the Trial Court's determination (that he won). The Trial Court's brief order of denial restated its prior ruling on the University's motion to dismiss

-10-

Wolek's complaint. The subject order states as follows: "This Court has held that 'whether it was ordered with kindly at the front or not, this is a direct restriction on his right to speech that endures to the time of this writing.' The University has already made these arguments, and the Court rejected them. It will not revisit the issue a third time." TR, p. 127. It is from this order of the Trial Court's that the University now brings this interlocutory appeal.

STANDARD OF REVIEW

### I. Review of Interlocutory Appeal

Appellate review is generally limited to final orders adjudicating all rights of the "parties in an action or proceeding, or a judgment made final under Rule 54.02 [after a determination that no just reason for delay exists]." CR 54.01; CR 54.02(1). In certain circumstances, this Court will review interlocutory appeals if permitted by statute, civil rule, or common law. *Baker v. Fields*, 543 S.W.3d 575, 577 (Ky. 2018). Here, the University's interlocutory appeal is permitted as an order denying a claim of absolute immunity. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009). The scope of our review, accordingly, is limited to "the specific issue of whether immunity was properly denied, nothing more." *Baker*, 543 S.W.3d at 578.

*II. Judgment on the Pleadings*

In addition, CR 12.03 allows for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ." Our Supreme Court has interpreted CR 12.03 to permit judgment on the pleadings where the controlling facts are not in dispute and only questions of law are at issue. *City of Pioneer Village v. Bullitt Cnty. ex rel. Bullitt Fiscal Court*, 104 S.W.3d 757 (Ky. 2003). "Under [CR 12.03], a judgment based on a motion for judgment on the pleadings is reserved for those cases in which the pleadings demonstrate that one party is conclusively entitled to judgment." *KentuckyOne Health, Inc. v. Reid*, 522 S.W.3d 193, 194 (Ky. 2017).

"When a party moves for a judgment on the pleadings, he admits for the purposes of his motion not only the truth of all his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also the untruth of all his own allegations which have been denied by his adversary." *Archer v. Citizens Fidelity Bank & Trust Co.*, 365 S.W.2d 727, 729 (Ky. 1962), *as modified on denial of reh'g* (Mar. 22, 1963). The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts for relief. *Id.* Moreover, a motion for judgment on the pleadings presents pure issues of law, which we review *de novo. See Mosely v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 585 (Ky. 2021).

A Trial Court's review of a motion for judgment on the pleadings is confined to the pleadings, including exhibits. In the appeal before us, the pleadings include Wolek's complaint and the University's answer, in addition to the University's three attached exhibits. We acknowledge that the Trial Court's consideration of proffered information falling outside the confines of the pleadings may convert a motion on the pleadings into a motion for summary judgment pursuant to CR 56. Once "matters outside the pleadings are presented to and not excluded by the court, the motion [for judgment on the pleadings] shall be treated as one for summary judgment and disposed of as provided for in [CR] 56. . . ." CR 12.03; *see Moss v. Robertson*, 712 S.W.2d 351, 353 (Ky. App. 1986) ("[M]otion for judgment on the pleadings, CR 12.03, became one for summary judgment as the trial court considered 'matters' outside the pleadings in arriving at its decision."). Nevertheless, CR 12.03 also states that "all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by [CR] 56."

Considering that the Trial Court denied the University's motion for judgment on the pleadings on the same day that the University filed its motion, we can dispose of any argument that CR 56 governs our standard of review. Here, neither party had a reasonable opportunity to present materials outside the confines of the pleadings. *See Hoke v. Cullinan*, 914 S.W.2d 335, 337 (Ky. 1995) (holding

-13-

that the Trial Court did not act prematurely where parties were given a three-month opportunity to present evidence of the existence of disputed material fact pursuant to CR 12.03 and CR 56).

This Court, therefore, must determine whether Wolek filed suit within the Act's one-year waiver of immunity, giving no deference to the Trial Court's ruling on purely legal issues, and only in consideration of the pleadings. Again, as it is worth repeating, our *de novo* review takes into account Wolek's complaint, the University's answer, the three accompanying exhibits attached thereto, and nothing more.

*III. Kentucky's Pleading Standard*

CR 8.01(1) requires that "[a] pleading which sets forth a claim for relief . . . contain (a) a short and plain statement of the claim showing that the pleader is entitled to relief and (b) a demand for judgment for the relief to which he deems himself entitled." In determining whether a complaint sufficiently pleads a cause of action, we must liberally construe the allegations contained therein. *See Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 241 (Ky. 2020) ("We refuse to mandate a heightened pleading standard and, therefore, reiterate Kentucky's requirement of bare-bones, notice pleading."); *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983) (pleadings "should be liberally construed"). Our highest Court has described the liberal notice pleading standard as one that does not require a

-14-

plaintiff "to state a claim with technical precision under [CR 8.01(1)], as long as a complaint gives a defendant fair notice and identifies the claim." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (citing *Cincinnati, Newport, & Covington Transp. Co. v. Fischer*, 357 S.W.2d 870, 872 (Ky. 1962)).

## ANALYSIS

This interlocutory appeal does not concern the substantive merits of Wolek's allegations of liability. Our review is limited to the legal issue of governmental immunity and the time limitations imposed on a waiver. Nonetheless, we note that the Act provides a cause of action for, *inter alia*, a postsecondary institution's violation of policies ensuring the protection of "the fundamental and constitutional right of all students and faculty to freedom of expression . . . ." KRS 164.348(2)(a), (3)(a). The Act permits an aggrieved student or faculty member to bring suit against "the institution, or any of its agents acting in their official capacities, for damages arising from the violation" if "asserted in any court of competent jurisdiction within one (1) year of the date the cause of action accrued." KRS 164.348(3)(a)-(b). The Act specifies that "[t]he cause of action shall be deemed to have accrued at the point in time the violation ceases or is cured by the institution." KRS 164.348(3)(b). There is no dispute that the General Assembly's enactment of KRS 164.348(3)(a)-(b) amounts to an

explicit waiver of the University's governmental immunity for a period of one year from the date of accrual. *See Ruplinger v. Louisville/Jefferson Cnty. Metro Gov't*, 607 S.W.3d 583, 586 (Ky. 2020). The question thus becomes whether the pleadings demonstrate that Wolek cannot prove any set of facts that he filed suit within the immunity-waiver period, thereby entitling the University to judgment as a matter of law.

Turning to Wolek's complaint, he alleges two specific expressions of speech, which he maintains the University responded to in violation of the Act. As discussed above, this Court must accept Wolek's allegations as true. Wolek's first alleged protected expression of speech occurred on February 22, 2023, in Wolek's Email to Tolson and Reed, wherein he expressed concerns that the Award selection process was incompliant with governing standards and policies. Wolek's second claimed protected expression of speech occurred on March 26, 2023, when he transmitted the Email to Johnson. In addition, Wolek alleges that the University violated the Act on two occasions distinct from that in which his cause of action accrued. The first violation date allegedly occurred when the University retaliated against him via Reed's March Email. The second alleged violation date occurred at the time Reed issued the FAP Discipline. While these dates are important to our analysis, the date of accrual is the paramount issue of law this Court is tasked with identifying.

Based on the pleadings, Wolek may only prevail if this Court finds either: (1) Wolek filed suit within the one-year immunity waiver period based on the ongoing nature of Reed's March Email violation – *i.e.*, the pleadings sufficiently allege a timely-filed complaint, and discovery is needed to pinpoint the exact date of accrual; or (2) the accrual date occurred when the University ceased the violation upon Reed's alleged denial of Wolek's purported FAP Appeal on May 8, 2023. For the reasons stated below, we find the pleadings present issues of fact regarding either theory of accrual, thereby preventing judgment in the University's favor.

In support of our holding, we note that Wolek's cause of action is premised on the University's retaliation in response to his "*emails*," which Reed labeled as "disruptive." TR, p. 4 (emphasis on the plural form of email). As inferred from Wolek's factual averments, these emails include his Email to Tolson and Reed and his Email to Johnson. It follows, then, that Reed's March Email attempting to silence Wolek's criticisms of the Award selection process allegedly commenced a violation of the Act, which the University reinforced upon its FAP Discipline, and which continued through the date of Wolek's May 8, 2024, filing of suit. Indeed, under a liberal interpretation of the complaint, Wolek remained, and perhaps still remains, subject to further discipline in the event he violates Reed's March Email directive.

While the University argues that the Counsel Findings Email to CCS faculty, dated March 31, 2023, cured any alleged violation related to Reed's March Email, we cannot weigh the veracity of this clear issue of fact. *See La Vielle v. Seay*, 412 S.W.2d 587, 590 (Ky. 1966) (stating that if "the pleadings raise any issue of material fact[,]" then a motion for judgment on the pleadings "should be denied").

We further recognize the University's concerns regarding whether Wolek's claims have even accrued, as the Trial Court's order seemingly concludes that the University's violations continue to date. However, we are tasked with evaluating the pleadings, giving no deference to the Trial Court's application of the law to the facts. We agree with the premise that the *pleadings* demonstrate a potential conclusion that Wolek's cause of action accrued at some point on or after May 8, 2023. Said differently, while the pleadings fail to identify a specific accrual date, Wolek's complaint sufficiently alleged a continuing violation that presents questions of fact regarding when or if the University ceased or cured the alleged violation(s). Upon discovery, the University has the ability to pursue dispositive motions regarding the date of accrual and the justiciability of Wolek's claims. At this early juncture, judgment on the pleadings is neither the proper vehicle nor the proper time to end this litigation.

As an alternative basis for affirmance, a liberal reading of Wolek's complaint alleges an accrual date of May 8, 2023, when Reed concluded the FAP Disciplinary process. We acknowledge that the University's answer denies that Wolek ever requested an appeal of the FAP Discipline or that such a process is available. However, the pleadings present a disputed issue of fact that we cannot weigh in this appeal's procedural posture. Again, judgment on the pleadings is simply inappropriate where a material issue of fact is disputed. *See, e.g.*, *Russell*, 610 S.W.3d 233. If Wolek appealed the FAP Discipline and Reed denied the appeal on May 8, 2023, both allegations that we must accept as true at this early stage, the Act's immunity waiver had yet to expire when Wolek filed suit on May 6, 2024.

On this point, we reject the University's argument that Wolek's alleged appeal of the FAP Discipline has no bearing on our analysis. The University cites *Delaware State College v. Ricks*, 449 U.S. 250 (1980), for the proposition "that a claim accrues on the date of the alleged injury, not at the conclusion of an appeal process or grievance process that might otherwise have remedied the injury." Reply Brief, p. 2. In *Ricks*, a professor sued the college for employment discrimination and civil rights violations for denying him tenure. *Id.* at 254-55. In conformity with its policy, the college offered the professor the

opportunity to remain on faculty for one additional year pursuant to a "terminal" contract, which the professor accepted. *Id.* at 252-54.

The Federal District Court ultimately granted the college's motion to dismiss as untimely the professor's complaint, which was filed years later, finding that the accrual date commenced upon the college's notice to the professor that he may enter into a one-year terminal contract. *Id.* at 254-55. On appeal, the United States Supreme Court ultimately agreed with dismissal. *Id.* at 256. Because the professor only alleged that the college committed an unlawful employment practice by denying him tenure, the "continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

The Court's holding in *Ricks* is not on point with the appeal before us. In *Ricks*, the material facts were not in dispute. Here, the University contests whether Wolek ever appealed the FAP Discipline, thereby presenting a question of fact preventing judgment on the pleadings. We could end the analysis here, but we note also that the subject matter and elements of an employment discrimination cause of action are materially distinguishable from those in a freedom of expression case. In addition, a college's policy of offering one-year terminal contracts to aspiring non-tenured professors is not an appeals process and is not analogous to the FAP procedure. Finally, here the General Assembly has clearly

-20-

provided that a claim, such as Wolek's, accrues upon the cessation or curing of the University's alleged violation(s). KRS 164.348(3)(b) ("The cause of action shall be deemed to have accrued at the point in time the violation ceases or is cured by the institution."). *Ricks* does not address this statute; we cannot ignore it; and it is central to the issue before us.

Considering that Wolek may ultimately prove and prevail on his allegations that his injury accrued after the Counsel Findings Email or upon Reed's denial of his request to appeal the FAP Discipline, the case *sub judice* is ripe for discovery, and judgment on the pleadings is improper. *See Pioneer Village*, 104 S.W.3d at 759 (A motion for judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove *any set of facts* that would entitle him/her to relief.") (emphasis added); *see also Russell*, 610 S.W.3d at 242 ("The denial of a judgment on the pleadings allows for discovery on legitimate claims.").

In sum, we hold that Wolek's complaint and the University's answer demonstrate that Wolek may succeed in proving an operative date of accrual falling on or after May 8, 2023.[5] At this stage of litigation, immunity is a triable defense as there are issues of fact regarding the time that Wolek's claim accrued.

---

[5] As we are affirming on straight-forward legal grounds, we decline to address Wolek's novel legal theory, which he presents for the first time in his Appellee Brief, that he timely filed his complaint pursuant to the "savings statute contained in KRS 413.270." Appellee Brief, p. 7.

*See KentuckyOne Health*, 522 S.W.3d at 197-98.  As a result, the Trial Court did not err in denying the University's motion for judgment on the pleadings.

<u>CONCLUSION</u>

For the reasons aforementioned, this Court hereby affirms the Jefferson Circuit Court's Order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jeremy S. Rogers
Paige E. Hornback
Louisville, Kentucky

BRIEF FOR APPELLEE:

Elizabeth Gatten
Andrew Dutkanych
Louisville, Kentucky